United States Court of Appeals
Fifth Circuit

**F I L E D**

February 13, 2004

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 03-50580

_____

BONNIE HANDZLIK,

Plaintiff - Appellant,

versus

UNITED STATES OF AMERICA, ET AL.,

Defendants,

JAMES D. ROCHE, SECRETARY, UNITED STATES AIR FORCE,

Defendant-Appellee.

_____

**Appeal from the United States District Court
For the Western District of Texas
San Antonio Division
SA-02-CV-126**

_____

Before KING, Chief Judge, JONES, and SMITH, Circuit Judges.

EDITH H. JONES, Circuit Judge:[*]

Plaintiff-appellant Bonnie Handzlik filed suit against the United States Air Force, alleging retaliation in violation of Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000 et seq. The district court granted the defendant's motion for summary judgment and Handzlik now appeals. We reverse and remand.

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## BACKGROUND

Handzlik began work with the Department of the Air Force on September 14, 1998, as an Entertainment Operations Specialist. Before holding this position, Handzlik had 25 years of experience within the Department of Defense. Eight months later, on May 19, 1999, Thomas Edwards, Chief of the Air Force Entertainment Branch, informed Handzlik of her termination, which would become effective on May 21, 1999. On May 20, 1999, Handzlik spoke with an Equal Employment Opportunity counselor and alleged that her termination was the result of sexual harassment by a fellow employee, Bernie Rone. Handzlik later filed a formal complaint of sexual harassment with the EEOC.

On June 21, 1999, Handzlik applied for another job with the Air Force as a Facilities Program Specialist. According to the job description, the position involved "unusually complex pro-gramming and construction problems and issues." On August 6, 1999, Handzlik was informed that she had not been selected for the position because she lacked the necessary military construction ("MILCON") experience. Eleven other people applied for the Facilities Program Specialist position. Two of those applicants were offered the position and turned it down, while the other nine applicants were also rejected.

Handzlik alleges that her non-selection for the Facilities Program Specialist position was retaliation for her prior sexual harassment complaint. In granting the defendant's

motion for summary judgment, the district court found that Handzlik failed to show that the defendant's reason for not selecting Handzlik was pretext for retaliation.

**STANDARD OF REVIEW**

We review the district court's grant of summary judgment de novo. BP Oil Intern., Ltd. v. Empresa Estatal Petoleos de Ecuador, 332 F.3d 333, 336 (5th Cir. 2003). Summary judgment is only proper where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Additionally, all inferences from the record must be drawn in the light most favorable to the non-movant. Matshusita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 587-88 (1986).

**DISCUSSION**

This case presents two questions for resolution by this court. First, Handzlik argues that she presented a claim of sexual harassment that the district court improperly rejected. Second, Handzlik argues that the district court should not have granted the defendant's motion for summary judgment on her Title VII retaliation claim. We will address each issue in turn.

**I. Sexual Harassment**

Handzlik contends that her federal complaint stated an independent claim of sexual harassment leading to her termination. However, Handzlik's First Amended Complaint does not set forth a

Title VII sexual harassment cause of action. To establish a quid pro quo sexual harassment claim, the plaintiff is required to show a nexus between the "tangible employment action" and the plaintiff's "acceptance or rejection of [her] supervisor's alleged sexual harassment." Casiano v. AT&T Corp., 213 F.3d 278, 283 (5th Cir. 2000). Handzlik's complaint did not state such a claim. In addition, Handzlik states in her complaint that "in filing a sexual discrimination wrongful discharge complaint, [Plaintiff] was, in fact, engaged in activity protected by Title VII of the Civil Rights Act of 1991." Handzlik references her prior sexual discrimination claim only to illustrate the "protected activity" required for a retaliation claim.

We have carefully considered whether Handzlik apprised the court in some other way of an actionable sexual harassment claim. For, oddly enough, in its motion for summary judgment, the Air Force argued that it was entitled to summary judgment on Handzlik's sexual harassment claim. Federal Rule of Civil Procedure 15(b) provides that issues not raised in the pleadings may be "tried by express or implied consent of the parties." At least one of our sister circuits has questioned Rule 15(b)'s application at the summary judgment phase. See Indep. Petroleum Ass'n of Am. v. Babbitt, 235 F.3d 588, 596 (D.C. Cir. 2001). In this circuit, however, it seems that Rule 15(b) may apply at the summary judgment stage. See United States ex rel. Canion v. Randall & Blake, 817 F.2d 1188, 1193 (5th Cir. 1987). Thus, when

4

"both parties squarely address[] [a claim] in their summary judgment briefs," it may be argued that the complaint was constructively amended. Whitaker v. T.J. Snow Co., 151 F.3d 661, 663 (7th Cir. 1998). That proposition does not work for Handzlik here. Her opposition to the defendant's summary judgment motion makes no mention of a sexual harassment claim. Instead, she focuses on the retaliation claim, which was the only claim specifically pled in her complaint. There is no basis for a trial by consent in the summary judgment proceedings, because Handzlik did not argue a sexual harassment claim.

In addition, the district court noted that Handzlik's trial attorney stated in open court that her client was not pursuing a sexual harassment claim. Trying to deny this outright abandonment of the claim, Handzlik now argues that the district court misunderstood her attorney's statements. Had this been true, Handzlik could have sought a Rule 59 rehearing of the summary judgment decision or filed a Rule 60(b) motion for relief from the judgment, but she took neither course. Given that Handzlik did not plead a sexual harassment claim in her complaint, did not mention a sexual harassment claim in her brief in opposition to summary judgment, and assured the district judge that no sexual harassment claim was being pursued, the judge did not err or abuse his discretion in holding that no sexual harassment claim was presented.

## II. Retaliation

We next turn to Handzlik's Title VII retaliation claim, which is governed by the familiar McDonnell-Douglas framework. See Fierros v. Tex. Dept. of Health, 274 F.3d 187, 191 (5th Cir. 2001). To establish a prima facie case of retaliation under Title VII, Handzlik must prove "(1) that [she] engaged in activity protected by Title VII; (2) that [she] suffered an adverse employment action; and (3) that a causal connection exists between the protected activity and the adverse employment action." Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427 (5th Cir. 2000). Activity is protected under Title VII if the employee has "(1) opposed any practice made an unlawful employment practice by this subchapter, or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Id. at 428 (citing 42 U.S.C. § 2000e-3(a) (2000)). If Handzlik satisfies this burden, the defendant must articulate a "legitimate, non-discriminatory reason for the adverse employment action." Id. at 427. If the defendant is able to provide such a reason or reasons, Handzlik must then prove that the defendant's reasons are pretext for unlawful retaliation. Id.

By filing a claim of sexual harassment with the EEOC, Handzlik "opposed [a] practice made . . . unlawful" by Title VII and thus engaged in protected activity. See Walker v. Thompson, 214 F.3d 615, 629 (5th Cir. 2000). In addition, Handzlik's non-selection for the Facilities Program Specialist position constitutes an adverse employment action, given the fact that non-

6

selection is an "ultimate" employment decision.  Id.; see also Gee v. Principi, 289 F.3d 342, 345 (5th Cir. 2002).  Thus, to establish her prima facie case, Handzlik must show that a causal connection exists between her sexual harassment claim and her non-selection for the Facilities Program Specialist position.

Handzlik "need not prove that her protected activity was the sole factor motivating the employer's challenged decision in order to establish the 'causal link' element of a prima facie case."  Long v. Eastfield Coll., 88 F.3d 300, 305 n.4 (5th Cir. 1996).  However, "[i]f an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct."  Chaney v. New Orleans Pub. Facility Mgmt., Inc., 179 F.3d 164, 168 (5th Cir. 1999).  Jerry Jarvis made the final hiring decision with respect to the Facilities Program Specialist position.  Jarvis asserts that he did not learn of Handzlik's EEOC complaint until February 2000, well after the decision not to hire Handzlik was made.  However, Handzlik states that she called Jarvis on July 9, 1999, to find out why her name did not appear on the initial referral list for the open position.[1] During that conversation, Handzlik claims that Jarvis stated he had

---

[1]     Initially, the Air Force personnel office made a mistake in calculating Handzlik's years of experience and concluded that she was not minimally qualified for the Facilities Program Specialist position.  The mistake was later rectified and Jarvis received a new referral list containing Handzlik's name.

heard talk around the office about her but that he could not discuss its nature with her. In response, Jarvis stated that he did not recall such a conversation, but that it could have occurred. Jarvis also stated that the only "talk" he heard about Handzlik concerned her dismissal from her previous position and not her sexual harassment complaint.

Additionally, a close temporal proximity between the protected conduct and the adverse employment action may be sufficient to satisfy the causal connection prong of the prima facie case. Evans v. City of Houston, 246 F.3d 344, 354 (5th Cir. 2001). While neither party has alleged that the time lapse between the start of Handzlik's EEO complaints and her non-selection for the open position, which amounts to just over two months, is problematic, we note that similar amounts of time have been held sufficient to establish the requisite causal link. Id.

At the summary judgment stage, we must draw all inferences from the record in the light most favorable to Handzlik, as the non-movant. In addition, we note that only a "minimal showing" is necessary to establish a prima facie case. Bauer v. Albemarle Corp., 169 F.3d 962, 967 (5th Cir. 1999). Given these underlying principles and the summary judgment evidence in the record, Handzlik has proffered sufficient evidence to establish the causation element of her prima facie case. The defendant was required to present a legitimate, non-retaliatory reason for Handzlik's non-selection.

To establish a legitimate, non-retaliatory reason, the defendant must "offer[] admissible evidence sufficient for the trier of fact to conclude that [Handzlik] was [not hired] [for a non-retaliatory reason]." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000). "This burden is of production, not persuasion." Id. Jarvis alleges that the position for which Handzlik applied required MILCON experience, which entails dealing with appropriated funds, and because Handzlik's resume did not reflect any experience in this area, she was not qualified for the position. In addition, Jarvis states that nine other applicants were rejected for the very same reason: lack of MILCON experience. Thus, the defendant has provided a sufficiently legitimate, non-retaliatory reason for failing to hire Handzlik and any "presumption of discrimination drops out of the picture." Id. at 143 (internal citations and quotations omitted).

To survive summary judgment, Handzlik must raise a genuine issue of material fact about whether the defendant's proffered reasons for failing to hire her are "unworthy of credence." Blow v. City of San Antonio, 236 F.3d 293, 297 (5th Cir. 2001). The Supreme Court has held that the trier of fact may infer retaliation or discrimination from the falsity of the employer's explanation. See Reeves, 530 U.S. at 146. The plaintiff need not, therefore, introduce additional evidence of discrimination in order to survive summary judgment. Id. Handzlik argues that a perceived lack of appropriated funds MILCON

9

experience is simply pretext for unlawful retaliation. To support her argument, Handzlik points to several facts that she argues cast doubt on Jarvis's non-retaliatory explanation.

First, the official job description for the Facilities Program Specialist position does not mention appropriated MILCON experience as a requirement. Instead, the job description only mentions that the employee will "review[], evaluate[], and vali-date[] all Air Force <u>nonappropriated</u> fund projects" (emphasis added). The employee would also be responsible for "resolv[ing] unusually complex programming and construction problems and issues." Consistent with this description, Handzlik's resume included her three years of experience managing "the TRADOC MWR nonappropriated fund (NAF) Construction Program." She states that she would have reported her appropriated fund MILCON experience had the job description mentioned such a requirement.

Second, Jarvis's explanation of the selection process is strange. Jarvis insists that the description painted an incomplete picture of the job's function, which actually required the employee to have appropriated fund MILCON experience to manage the construc-tion of a large-scale wellness center. Jarvis asserts that nine other applicants' resumes, and not just Handzlik's, were evaluated for appropriated fund MILCON experience, and they were all non-selected for the position because of the deficiency. The two applicants offered the position, by contrast, had such experience. However, neither of those applicants' resumes specifically mentions

10

appropriated MILCON experience: one applicant's resume indicated that he had worked for the Corps of Engineers, while the other applicant worked in an Engineering Squadron. Jarvis and John Scanlon, Jarvis's immediate superior, responded that any applicant with experience in the Corps of Engineers or an Engineering Squadron would have the necessary MILCON experience.

Third, notwithstanding her allegedly fatal lack of MILCON experience, Handzlik did end up among the three final contenders on the second referral list and her possible appointment was discussed by Jarvis and Scanlon.

It is not this court's place to judge whether Handzlik is as qualified as the two applicants who were offered the job. See Bienkowski v. Am. Airlines, Inc., 851 F.2d 1503, 1507-08 (5th Cir. 1988). Moreover, we do not pass judgment on the utility of using appropriated fund MILCON experience as a benchmark for evaluating the Facilities Program Specialist applicants. But we must consider the truthfulness of Jarvis's legitimate, non-discriminatory reason to determine if it may be a pretext for retaliation. We conclude that Handzlik has succeeded in creating a genuine issue of material fact about whether Jarvis actually discounted Handzlik's application because of her perceived lack of appropriated fund MILCON experience.

To sum up, even though two versions of the job description were prepared, appropriated fund MILCON experience was never listed as a prerequisite on the description sent to the applicants.

11

In addition, while Jarvis and Scanlon claim to have offered the job to two applicants based on their MILCON experience, neither applicant actually listed the experience on his resume. Handzlik's evidence that Jarvis told her he had "heard talk" about her around the office, combined with the evidence supporting the notion that Jarvis's reason for not selecting Handzlik was false, may permit the trier of fact to conclude that the employer unlawfully retaliated. See Reeves, 530 U.S. at 143 (concluding that "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual'") (citations and quotations omitted).

We emphasize that the record evidence of causal connection and retaliation depends on credibility. Jarvis may have truthfully denied that he knew anything about Handzlik's retaliation complaint. The "talk" Jarvis had heard about Handzlik might have been, as the Air Force argues, simply reports about her inability to perform her previous job. But if Jarvis had heard only of Handzlik's incompetence at her other recent post, one would think Jarvis would have expressed that reason for not hiring her in his department. There is enough uncertainty at this time to deny the Air Force's request for summary judgment.

**CONCLUSION**

12

For the reasons stated above, we **REVERSE** the district court's order granting summary judgment and **REMAND** the case for further proceedings.

**REVERSED** and **REMANDED**.