NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 34

No. 2016-139

| | |
|---|---|
| Joseph L. LeClair | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| Hector LeClair | September Term, 2016 |

Helen M. Toor, J.

Robert J. Kaplan of Kaplan and Kaplan, Burlington, for Plaintiff-Appellant.

Leo A. Bisson of Primmer Piper Eggleston & Cramer PC, Montpelier, for Defendant-Appellee.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **DOOLEY, J.** Plaintiff Joseph LeClair appeals from the trial court's grant of summary judgment to defendant Hector LeClair, plaintiff's grandfather, in this negligence action. Plaintiff argues that the trial court erred by concluding that defendant owed him no duty and that the court abused its discretion by denying his motion to amend his complaint to add a new liability theory. We reverse and remand.

¶ 2. Defendant is experienced in construction and has developed several properties around the state. In 2011, defendant approached his son, Ricky LeClair, who also worked in construction, about replacing the roof on the building in which defendant has his office. Defendant's son, Ricky, then approached his twenty-seven-year-old son, plaintiff, about working on defendant's roofing project. Plaintiff had also worked in construction and was an experienced

roofer, but was unemployed at the time. According to plaintiff's deposition testimony, his father told him he would make "good money" for working on defendant's roof. Plaintiff's father supplied the tools, equipment, and materials for the roof job.

¶ 3. On October 7, 2011, plaintiff arrived at the property with another person to work on the roof. They had already removed the shingles from the roof, leaving only the underlayment, which on that October morning was covered with dew and early frost. Plaintiff claims that he initially decided not to work on the roof because the frost made it slippery but changed his mind when defendant arrived at the property and ordered him to begin work. According to his complaint, plaintiff climbed a ladder onto the property's porch roof to reach the second-story roof of the house. Plaintiff fell from the second-story roof and landed on the paved driveway below, sustaining serious and permanent head and spinal injuries.

¶ 4. Plaintiff brought this action against defendant for injuries sustained in his fall. His original complaint, filed in August 2014, included a single negligence claim, in which he alleged that defendant owed a duty of reasonable care in the design, condition, and maintenance of his premises to those lawfully on his property; that the frost-covered roof presented an unreasonable risk of harm; and that defendant breached his duty of care by demanding that plaintiff work on the roof when it presented an unreasonable risk.[1] Defendant's answer listed five defenses, including failure to state a claim, lack of privity between plaintiff and defendant, negligence by plaintiff that was the sole proximate cause of the injury, and conduct by plaintiff's father that was a supervening cause of the accident.

¶ 5. The parties agreed by stipulation to conclude all discovery by November 13, 2015, and to present any legal challenge to liability by motions for summary judgment to be filed on or

---

[1] It also contained a count alleging negligent infliction of emotional distress. The content of that count sought damages for "emotional distress" caused by the fall from the roof. We view that count as a specification of damages and thus do not separately consider it in this decision.

2

before December 31, 2015. Defendant filed a motion for summary judgment on January 4, 2016. He argued that he had no duty to warn plaintiff not to go on the frosty roof because plaintiff knew the roof was not safe, that plaintiff assumed the risk of injury by knowingly going on the slippery roof, and that plaintiff's injury resulted from the nature of plaintiff's work and not the condition of the premises. In making these arguments, defendant relied primarily on the allegations in plaintiff's complaint that plaintiff saw that the roof was covered with frost when he arrived and decided to delay starting work until the frost melted, that defendant ordered him to commence work immediately even though it was dangerous to work on the roof at that time, and that plaintiff commenced work as ordered to please defendant.[2]

¶ 6.     In his January 29, 2016 response to defendant's motion for summary judgment, plaintiff asserted that the motion attempted to characterize the arrangement to replace the roof as a traditional arms-length transaction between an otherwise uninvolved homeowner and the employee of a contractor. He contended that, instead, the evidence developed during discovery indicated that defendant was the ultimate employer on the roofing job and directed plaintiff with regard to how to perform that work. Plaintiff argued that the instant action arose from premises liability in the sense that defendant owned the property, which was also the work site, and that the property was in an unsafe condition for doing work on the roof. According to plaintiff, defendant's status as the ultimate employer on the project placed upon him a duty to provide a safe workplace for plaintiff. Plaintiff argued that he was not precluded from suing defendant because defendant's only disclosed insurance excluded workers' compensation coverage and thus defendant was not entitled to the exclusive remedy protections of workers' compensation law. Plaintiff further

---

[2] The complaint also alleged that defendant instructed plaintiff to spray water on the roof to melt the frost and plaintiff did so. In his deposition, plaintiff stated that defendant instructed him to do so, but that he thought it was a dumb idea and did not do it.

argued that defendant breached his duty as a landowner because he increased the foreseeable risk of harm by demanding that plaintiff work on the frosted roof.

¶ 7. Three days after filing his response to defendant's motion for summary judgment, plaintiff filed a motion to amend his complaint to add distinct counts entitled premises liability and negligence/safe workplace. On February 12, 2016, defendant filed an opposition to plaintiff's motion to amend, as well as a memorandum in response to plaintiff's response to defendant's motion for summary judgment. In his response, defendant directly addressed plaintiff's "employment claim," as well as the premises liability claim.

¶ 8. On March 25, 2016, the trial court granted defendant summary judgment on plaintiff's premises liability claim based on its conclusion as a matter of law that defendant did not breach any duty imposed on landowners. The court reasoned as follows:

> There is no dispute that Grandson was completely aware of the dangerous condition on the roof, and went on the roof anyway. Under such circumstances, there was no duty to warn. Restatement (Second) of Torts § 343 (1965) (Possessor of land is liable for a dangerous condition only if he "should expect that [the invitee] will not discover or realize the danger"). Nor has Grandson pointed to any authority for the position he is really positing: that there is a duty not to tell someone to do something they already know is dangerous. Nor is there any duty to clear ice off a roof to protect invitees. There being no duty, there can be no negligence.

The court also denied plaintiff's motion to amend his complaint, stating that: (1) it would be unfair to require defendant to respond to an entirely new claim after he had already filed a motion for summary judgment, particularly considering that the case had been pending for eighteen months; (2) the amendment was not merely a clarification of the original complaint, but rather a completely different theory of the case based on different facts; and (3) the amendment would be futile because plaintiff had conceded that any agreement to complete the roof was between him and his father, and not him and defendant.

4

¶ 9.    On appeal, plaintiff first argues that the trial court erred by finding that defendant had no duty with respect to his premises liability theory.  He contends that the facts alleged in the complaint and that emerged through discovery presented a jury question as to whether he breached his duty to exercise reasonable care in demanding that plaintiff get on the frost-covered roof.  He acknowledges that defendant had no duty to warn plaintiff of the open and obvious condition of the roof, but asserts that, by demanding that plaintiff go onto the frost-covered roof, he breached his duty of preventing the risk of foreseeable harm to plaintiff.  As for any assumption of risk on plaintiff's part,[3] plaintiff argues there is a jury question as to whether plaintiff's decision to go onto the roof in the face of defendant's demand to do so was voluntarily made.

¶ 10.    Given the circumstances of this case, we agree that the trial court erred in concluding, as a matter of law on summary judgment, that defendant owed no duty to plaintiff.  See Burgess v. Lamoille Housing P'ship, 2016 VT 31, ¶ 17, ___ Vt. ___, 145 A.3d 217 ("In reviewing a decision granting summary judgment, this Court applies the same standard as that applied by the trial court—the decision will be upheld if, viewing the evidence most favorably to the nonmoving party, there are no genuine disputed issues of material fact and the prevailing party is entitled to judgment as a matter of law.").  To support a negligence claim, a plaintiff must show that the defendant owed the plaintiff a duty that was breached, which proximately caused injury to the plaintiff.  Endres v. Endres, 2008 VT 124, ¶ 11, 185 Vt. 63, 968 A.2d 336.  Whether or not one party owes a duty to another is an expression of policy considerations about when people are entitled to legal protection.  Id.  Thus, whether a duty is owed is primarily a legal question in which the Legislature or courts "apply general categorical rules" establishing or withholding liability.

_____

[3] Defendant has raised assumption of risk only in support of his argument that defendant has no duty with respect to plaintiff's premises liability theory.  He has not raised assumption of risk as an affirmative defense in this case.  V.R.C.P. 8(c) (listing assumption of risk as affirmative defense that must be pled).

5

Restatement (Third) of Torts § 7 cmt. a (2010); see <u>Kuligoski v. Brattleboro Retreat</u>, 2016 VT 54A, ¶ 19, __ Vt. __, __ A.3d __.

¶ 11. Here, in considering the question of duty, the trial court was correct in examining plaintiff's premises liability theory under § 343 of the Restatement (Second) of Torts[4]; however, the court failed to make a complete analysis under that section. Section 343 provides that a "possessor of land" is liable "for physical harm caused to his invitees by a condition on the land if" the possessor satisfies three requirements: (1) knows or should know that the condition presents an unreasonable risk of harm to invitees; (2) "should expect that they will not discover or realize the danger, <u>or will fail to protect themselves against it</u>"; and (3) does not exercise reasonable care to protect the invitees from the danger.[5] Restatement (Second) of Torts § 343 (1965) (emphasis added). The critical criterion in this case is the second one, particularly whether defendant, under

---

[4] As we noted in <u>Langlois v. Proctor</u>, we have generally followed applicable provisions of Restatements unless there is a strong rationale not to do so. 2014 VT 130, ¶ 34, 198 Vt. 137, 113 A.3d 44. We applied § 343 in <u>Gero v. J.W.J. Realty</u>, although we did not find liability under that section based on the facts of the case. 171 Vt. 57, 61-63, 757 A.2d 475, 478-79 (2000). We find no reason to reject the adoption of Restatement (Second) of Torts § 343 and its companion § 343A. We recognize that some of our older cases concerning this area of the law have found no liability to an invitee when an injury was caused by a condition that was obvious or known to the invitee. See, e.g., <u>Wall v. A.N. Deringer, Inc.</u>, 119 Vt. 36, 38, 117 A.2d 390, 391 (1955). To the extent that we have provided a rationale for such a rigid rule, however, it has been primarily that a plaintiff who fails to avoid a patent and obvious dangerous condition is contributorily negligent as a matter of law. See <u>Latrell v. Swain</u>, 127 Vt. 33, 40, 239 A.2d 195, 200 (1968); <u>Morgan v. Renehan-Akers Co.</u>, 126 Vt. 494, 497, 236 A.2d 645, 647 (1967); <u>Wall</u>, 119 Vt. at 38, 117 A.2d at 391. These decisions arose when contributory negligence was a total defense to negligence liability. Effective July 1, 1970, however, the Legislature enacted 12 V.S.A. § 1036, abolishing the defense of contributory negligence and establishing in its place comparative negligence. Thus, the continuing viability of the holdings in these decisions is uncertain. On this point, we concur with the holding of <u>Wisdom v. TJX Companies, Inc.</u>, 410 F. Supp. 2d 336, 344 (D. Vt. 2006), wherein the court stated that while "Vermont law has traditionally afforded a measure of protection to business owners whose invitees injure themselves by disregarding obvious dangers," this protection bears more on the plaintiff's comparative negligence than on the defendant's duty of care.

[5] In <u>Demag v. Better Power Equip., Inc.</u>, 2014 VT 78, ¶ 26, 197 Vt. 176, 102 A.3d 1101, we abolished the common law distinction between the duty a land possessor owes to an invitee and the duty owed to a licensee. The duty owed to an invitee now controls for both types of persons entering onto the land. Thus, we need not consider whether plaintiff would have been considered an invitee or a licensee prior to <u>Demag</u>.

the circumstances, should have expected that plaintiff would not protect himself from the danger that was open and obvious to both of them.

¶ 12.    Section 343 "should be read together with § 343A, which deals with the effect of the fact that the condition is known [or obvious] to the invitee." Restatement (Second) of Torts, § 343 cmt. a.  In relevant part, § 343A provides that "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts § 343A (emphasis added).  The scope of the section is explained more fully in comments e and f:

> e. In the ordinary case, an invitee who enters land is entitled to nothing more than knowledge of the conditions and dangers he will encounter if he comes.  If he knows the actual conditions, and the activities carried on, and the dangers involved in either, he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining on the land.  The possessor of the land may reasonably assume that he will protect himself by the exercise of ordinary care, or that he will voluntarily assume the risk of harm if he does not succeed in doing so.  Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them.
>
> . . . .
>
> f. There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger.  In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection.  This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

Id. § 343A cmt. e, f (emphasis added).[6]

---

[6]  The subject is covered by the Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 51 (2012).  This section imposes liability for conditions that "pose risks to entrants on the land" under a "duty of reasonable care" to all entrants irrespective of the status of

¶ 13. In light of the above law, we conclude that the trial court's determination that defendant had no duty as a matter of law towards plaintiff on this summary judgment record was erroneous. The facts of this case, as alleged, do not preclude a finding of duty under § 343 and § 343A, as set forth above. The key alleged fact in this case is that defendant, in a position of authority vis-à-vis plaintiff, ordered him to go onto the frosted roof despite the obvious danger involved. A jury could conclude that, in ordering plaintiff to climb onto the roof despite its dangerous condition acknowledged by both defendant and plaintiff, defendant should have anticipated that the condition of the roof presented an unreasonable risk of harm to plaintiff. Cf. Wisdom, 410 F. Supp. 2d at 346 (concluding that genuine issue of material fact existed as to degree of parties' respective negligence in plaintiff tripping over clothing rack in store because even though "the danger posed by the rack was obvious as a matter of law, [plaintiff] has established the existence of disputed facts sufficient to require a jury finding as to whether [defendant] should have anticipated the harm despite its obviousness"); Dos Santos v. Coleta, 987 N.E.2d 1187, 1198 (Mass. 2013) (holding that there was jury question as to whether defendant landlord should have anticipated plaintiff tenant would be injured as result of jumping off trampoline into shallow inflatable pool placed next to trampoline by landlord). Accordingly, the trial court erred by not denying defendant's motion for summary judgment with respect to plaintiff's premises liability claim.

---

the entrant. Id. Comment a of that section indicates that the rule stated therein is similar to § 343 of the Restatement (Second) of Torts, but Comment k indicates that the rule expands the principles of § 343 and § 343A of the Restatement (Second) of Torts in two respects: (1) by eliminating most distinctions based on the status of the entrant and (2) by eliminating the concept that the possessor has no duty with respect to obvious or known conditions in favor of a general standard of reasonable care under which the entrant's knowledge of the condition or its obviousness is a factor in determining whether the possessor has exercised reasonable care under the circumstances. Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 51 cmt. k. Plaintiff has not requested that we adopt § 51, and, to the extent that there is any difference in the context of this case between § 51 and § 343 and § 343A of the Restatement (Second) of Torts, we are not basing our decision on it.

¶ 14.	The dissent asserts that this is not a premises liability case at all because the claim is not tied to defendant's status as a landowner and does not rest on any evidence or argument that defendant is liable for an unreasonably dangerous condition on the premises.  According to the dissent, plaintiff, as a professional roofer, is in a better position than defendant to assess the danger from the frost-covered roof and either eliminate or avoid it.

¶ 15.	The record does not support these assertions.  Plaintiff made a viable premises liability claim based on his contention that, by directing him to encounter a dangerous condition on defendant's property, defendant should have anticipated that he would encounter that dangerous condition and might be injured as a result.  The dissent asks what defendant was supposed to do to prevent the danger to plaintiff.  The answer is as open and obvious as the dangerous condition— not demand that plaintiff, who had decided not to go up on the roof because of its dangerous condition, encounter the dangerous condition on defendant's property.

¶ 16.	In support of its position that defendant is entitled to judgment as a matter of law on the premises liability claim, the dissent suggests, incorrectly, that there was no dispute as to plaintiff's superior knowledge of the danger presented by the frost-covered roof.  Plaintiff asserted that defendant himself was an experienced homebuilder; that defendant directed him daily on the roof replacement project; and that on the day of the accident when plaintiff indicated he did not want to go up on the frost-covered roof, defendant directed him to hose it down and then go up on the roof.  Viewing the evidence most favorably to plaintiff as the nonmoving party, a jury could have concluded that defendant, as plaintiff's grandfather and customer,[7] was in a position to

_____

[7] Plaintiff's premises liability theory does not necessarily depend, as the dissent suggests, on the jury finding that defendant was plaintiff's employer.  Rather, defendant's liability could result from the jury concluding that defendant was aware of the risk the dangerous condition on his property posed to plaintiff and that his conduct in demanding plaintiff encounter the risk demonstrated that he anticipated plaintiff would not be able to avoid the risk and consequently be injured.

9

pressure plaintiff into encountering the dangerous condition on the premises, and thus should have anticipated that plaintiff might be injured in doing so. It is for the jury as factfinder, not this Court, to determine whether defendant breached a duty to prevent plaintiff from being injured by a dangerous condition on the property that defendant should have anticipated plaintiff would encounter.

¶ 17. The dissent correctly states that this is not a case where plaintiff's attention may have been distracted from the dangerous condition,[8] but incorrectly states that this case does not fall within the open-and-obvious exception in which the "property owner should not expect that a reasonable roofer, mid-job, will climb on to a frost-covered, underlayment-clad roof despite the obvious and recognized dangers." Post, ¶ 51. To the contrary, given the alleged facts, the jury could have concluded, to quote § 343A, comment f, that defendant "had reason to expect that [plaintiff would] proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." See Cracchiolo v. E. Fisheries, Inc., 740 F.3d 64, 71 (1st Cir. 2014) (stating that "a landowner can and should anticipate a particular harm on a finding that a reasonable man in plaintiff's position would conclude that the advantages of encountering the danger would outweigh the apparent risk"); cf. Lucasey v. Plattner, 2015 IL App (4th) 140512, ¶¶ 40-42, 28 N.E.3d 1046 (discussing "deliberate-encounter" exception to open-and-obvious doctrine, which courts apply when "a plaintiff is forced to make a choice between either facing the danger or neglecting his duties").

¶ 18. The dissent cites three cases in support of its position, none of which have much relevance here. The two older Missouri intermediate appellate court cases involved situations where the undisputed evidence demonstrated that the defendant commercial landowners had no

---

[8] The dissent examines the illustrations accompanying § 343A and concludes that none of them apply, but "[t]he illustrations accompanying § 343A comment f are clearly meant to be illustrative, not exhaustive." Dos Santos, 987 N.E.2d at 1193.

10

direct control over the work on their property by the plaintiffs, one of whom was an independent contractor and the other an employee of an independent contractor. See Kelly v. Dairy Queen Enters., Inc., 581 S.W.2d 903, 905-06 (Mo. 1979) (reversing jury verdict for plaintiff repairman, who was injured after falling off ladder on defendant's premises, where there was no evidence that defendant's conduct caused ladder to slip and plaintiff worked independently with his own equipment and "was not a servant ordered by defendant to go where he did"); Hokanson v. Joplin Rendering Co., 509 S.W.2d 107, 110-14 (Mo. 1974) (reversing jury verdict for plaintiff employee of independent contractor injured at defendant's business where plaintiff had superior knowledge of dangerous condition and was "[a] skilled workman following his own devices" who was "actually in charge of the operation in which he [was] engaged [and had] control over the area of the premises where he [was] injured"). Similarly, in the other case cited by the dissent, which does not even mention § 343A, the court affirmed summary judgment in favor of the defendant commercial landowner on a premises liability claim arising from the plaintiff's injury while loading sludge into a truck because the plaintiff's employer "was the dredging expert" and because the defendant "had no control of the operations of the dredging project" and "had no role whatsoever in the loading of the sludge material into the tankers." Armstrong v. Cerestar USA, Inc., 775 N.E.2d 360, 364, 373 (Ind. Ct. App. 2002).

¶ 19.    Far more relevant to this case are two longshoreman cases from the Second Circuit Court of Appeals. Under the then-current applicable workers' compensation act, longshoreman could sue ship owners for negligence, and the federal courts applied § 343A to address such claims. In the first case, Napoli v. Hellenic Lines, Ltd., 536 F.2d 505 (2d Cir. 1976), the plaintiff longshoreman was injured when he fell from snow-covered, unsecured plywood boards resting on top of a deck load of drums. The trial court charged the jury that if the dangerous condition was open and obvious to the plaintiff, the ship owner could not be found liable. In reversing the jury verdict in favor of defendant, the Second Circuit stated: "[W]e do not think that instructions which

11

flatly negate the duty to protect against obvious danger properly portray the present-day obligations owed by a landowner to one whom he invites upon his premises." Id. at 508. Citing § 343A, the Second Circuit held that there was evidence from which the jury could have concluded that the defendant should have reasonably anticipated that the plaintiff would not have been able to avoid the dangerous condition "since the only alternatives would be to leave his job or face trouble for delaying the work." Id. at 509. The court concluded that, under such circumstances, even if the plaintiff were negligent, the jury could "apply the doctrine of comparative negligence to reduce the shipowner's liability proportionately." Id.; Dos Santos, 987 N.E.2d at 1195 ("A plaintiff's own negligence in encountering the danger does not relieve the landowner of a duty to remedy that danger where the plaintiff's negligent act can and should be anticipated by the landowner.").

¶ 20.  Even more similar to our case is Lubrano v. Royal Neth. S.S. Co., 572 F.2d 364 (2d Cir. 1978). In Lubrano, the plaintiff longshoreman was injured when he fell while loading greasy drums of tallow in the hold of the defendant's ship. The plaintiff's theory was that his fall was caused by the absence of sufficient dunnage (pieces of rough lumber or plywood) on which the workers could stand and which the defendant normally provided. The trial court ruled as a matter of law that the ship owner had no reason to anticipate that the longshoremen would not wait for additional dunnage before proceeding with their work. Examining the record, however, the Second Circuit concluded that although the plaintiff's evidence was "ambiguous and unimpressive" as to whether an officer of the ship had directed the men to keep working despite the lack of sufficient dunnage, a jury could have concluded, based on that evidence, "that the ship's officer approved and joined in the direction that the men keep working, although the dunnage was not there," and thus that the defendant should have reasonably anticipated that the plaintiff would not be able to avoid the dangerous condition. Id. at 367.

12

¶ 21. Here, the evidence was disputed as to the extent defendant directed plaintiff's work and how plaintiff was to be compensated. Depending on the evidence presented at trial on these and other disputed facts, a jury could conclude that defendant breached a duty to protect plaintiff from encountering an open-and-obvious dangerous condition on his property by demanding that he encounter the dangerous condition, in which case he should have anticipated that defendant might be injured as a result of the condition. See id. (stating that "there would be a jury question" under § 343A if there was any evidence that ship's officer, after being notified of open-and-obvious dangerous condition, nonetheless had men keep working or joined in decision to have them do so). Accordingly, in this case the superior court's grant of summary judgment to defendant on plaintiff's premises liability claim was inappropriate.

¶ 22. We next address whether the trial court abused its discretion by denying plaintiff's motion to amend his complaint. The proposed amended complaint alleged two additional negligence counts. The first of these alleged that defendant "was negligent in ordering Plaintiff to work on the roof at the property despite the danger posed by the condition of the roof and Defendant used his position of authority and influence over Plaintiff to induce Plaintiff to comply with Defendant's order to work on the roof despite Plaintiff's reservation about doing so." The second additional count alleged that defendant was plaintiff's employee and, as a result, had a duty to provide a safe place to work, which he breached. It also alleged that defendant did not have worker's compensation insurance coverage. Because the first additional count raises essentially the same premises liability claim that was in the original complaint, and further because the trial court ruled only on the substantive validity of the second additional count, we limit our analysis to the latter count.

¶ 23. Although the theory that defendant was plaintiff's employer was formally introduced in plaintiff's motion to amend, its genesis lies in defendant's answer, discovery, and motion for summary judgment. As we noted above, defendant pled as affirmative defenses that

13

there was no privity between plaintiff and defendant and that the conduct of plaintiff's father, Richard LeClair, was a "supervening efficient cause of the accident." Defendant used his pretrial discovery to explore the employment relationships among plaintiff, plaintiff's father, and defendant. These defenses were fleshed out in the motion for summary judgment. In his first ground for summary judgment, defendant argued that plaintiff was his father's employee, not his grandfather's. On that basis, defendant argued: "[a]s owner, Defendant had no duty to plaintiff to assure a safe work place." In his fourth ground, defendant argued that even if he encouraged plaintiff to work on the frosty roof, as plaintiff complained, such encouragement created no legal duty.

¶ 24. Plaintiff's opposition to summary judgment focused on his new argument that defendant was his "ultimate employer" and as such he had a duty to provide a safe workplace. Plaintiff recounted defendant's characterization, in his summary judgment motion, of the roof-repair job as an arms-length transaction that cast defendant as an uninvolved homeowner, plaintiff's father as contractor, and plaintiff as contractor's employee and argued that his complaint included facts giving rise to the question of who employed plaintiff. Plaintiff stated that his original negligence action included an unsafe workspace claim and should not be limited to premises liability. He argued: "Defendant was on notice of this claim since Defendant has specifically defended against the claim that Plaintiff was his employee in the present motion." In connection with his response, plaintiff specifically argued that summary judgment was unavailable because there were disputed issues of material fact on the issue of whether he was the employee of defendant.

¶ 25. Plaintiff filed his motion to amend his complaint less than a week after filing his response to defendant's motion for summary judgment. Defendant's opposition to plaintiff's motion to amend argued that the original complaint included only general negligence and premises liability claims, and permitting plaintiff to add an employment claim would prejudicially change

14

the nature of the action. Defendant also argued that the record included no support for plaintiff's claim that he was defendant's employee and that the amendment was therefore frivolous.[9]

¶ 26. On March 25, 2016, the trial court granted defendant summary judgment and denied plaintiff's motion to amend on two grounds. First, it held that the motion to amend came too late because the case had been pending for eighteen months, discovery had been concluded, there was no good cause for the delay, and "the new cause of action is actually entirely contrary to his original claim, and asserts a different theory of the case based on different facts, apparently designed to avoid the clear result of the summary judgment motion." Second, the court held that plaintiff's claim that defendant was his employer "could not succeed" because the allegation in the amended complaint "still says only that [plaintiff] . . . was 'expecting' payment from [defendant] . . . , but not that they had any agreement or contract at all" and plaintiff "conceded that any agreement was between [defendant] . . . and Ricky."

¶ 27. We first address the prejudice ground underlying the trial court's decision to deny plaintiff's motion to amend his complaint. We review denial of a motion to amend a pleading for abuse of discretion. Lillicrap v. Martin, 156 Vt. 165, 170, 591 A.2d 41, 44 (1989). Leave to amend a complaint is liberally granted and "shall be freely given when justice so requires." Id.; V.R.C.P. 15(a). Our pleading standard is so liberal for three principal reasons: "(1) to provide maximum opportunity for each claim to be decided on its merits rather than on a procedural technicality, (2) to give notice of the nature of the claim or defense, and (3) to enable a party to assert matters that were overlooked or unknown to him at an earlier stage in the proceedings." Bevins v. King, 143 Vt. 252, 255, 465 A.2d 282, 283 (1983). This standard underlies Vermont Rule of Civil Procedure

---

[9] Defendant also asserted prejudice because the defense was funded by an insurer acting under a nonwaiver agreement that did not extend to employment claims. We understand that if the amendment were allowed defendant would be partially uninsured but we do not see how defendant is prejudiced by the timing of the claim. Defendant would be in the exact same situation if plaintiff had explicitly alleged that defendant was his employer in the original complaint.

15(b)'s provision for amendment in cases where "issues not raised by the pleadings are tried by express or implied consent of the parties," such issues "shall be treated in all respects as if they had been raised in the pleadings."

¶ 28.    Applying this liberal standard, we have summarized the limit on the trial court's discretion to deny a motion to amend a pleading as follows: "When there is no prejudice to the objecting party, and when the proposed amendment is not obviously frivolous nor made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny the motion." Bevins, 143 Vt. at 254-55, 465 A.2d at 283; see also Hunters, Anglers & Trappers Ass'n of Vt. v. Winooski Valley Park Dist., 2006 VT 82, ¶ 17, 181 Vt. 12, 913 A.2d 391 (accord). In this case, the trial court did not find the proposed amendment to be "obviously frivolous"[10] or "a dilatory maneuver in bad faith." Thus, the question comes down to whether granting the amendment would prejudice defendant.

¶ 29.    The trial court based its prejudice determination on three factors: (1) the claim in the amendment was entirely new and based on different facts; (2) the plaintiff did not show good cause for the delayed timing of the amendment; and (3) the case had been pending for eighteen

---

[10]    In Colby v. Umbrella, Inc., the trial court denied a motion to amend the plaintiff's complaint and dismissed the complaint deciding that, even if the complaint were amended as requested, it failed to state a claim on which relief could be granted. 2008 VT 20, ¶¶ 5-6, 184 Vt. 1, 955 A.2d 1082; see V.R.C.P. 12(b)(6). In reversing the dismissal, we accepted the Rule 12(b)(6) standard. See Colby, 2008 VT 20, ¶ 5 (explaining standard is whether, taking all factual allegations in complaint as true, "it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief" (quotation omitted)). In essence, Colby explains the standard for refusing to grant an amendment because it is obviously frivolous.

This case is unusual because, as explained below, the question whether defendant was plaintiff's employer was already in the case in the arguments for and against summary judgment. As a result, the trial court's analysis appears closer to answering whether summary judgment would still be granted for defendant, despite plaintiff's complaint amendment, rather than whether the theory stated in the complaint amendment was "obviously frivolous." As we hold in the following text, we cannot agree with the trial court's analysis even under the standard of whether summary judgment against plaintiff would be granted on the new claim in the amendment. Thus, we do not have to address whether the trial court used the wrong standard.

16

months, discovery had closed, and defendant had filed a motion for summary judgment. The second factor—the absence of good cause for the delay—does not implement a requirement under Bevins and it is not a ground to deny the motion to amend. The first factor is relevant to the extent it caused prejudice to plaintiff.

¶ 30. We conclude that this case is similar to Lillicrap v. Martin, although in that case the trial court granted a motion to amend an answer that added a statute-of-limitations defense six days after the beginning of trial and we affirmed that decision. 156 Vt. 165, 170-71, 591 A.2d 41, 43-44 (1989). In Lillicrap, the statute of limitations was raised in the defendant's motion for summary judgment, the statute-of-limitations issue "permeated [the] case from the start," and defendant "forcefully put the plaintiff on notice" of the issue. Id. at 171, 591 A.2d at 44 (quotation omitted). In this case, although defendant took the position that plaintiff had raised only premises liability in his complaint, defendant raised the issue of who was plaintiff's employer in discovery and then in his motion for summary judgment. Relying on excerpts from depositions and answers to interrogatories, he took the position that plaintiff was employed by his father, and not defendant, so defendant had no liability as plaintiff's employer.

¶ 31. Just as the statute-of-limitations issue entered the case in Lillicrap through the motion for summary judgment, the employment-based-liability issue entered this case in the motion for summary judgment. By the time the trial court considered the motion to amend, the issue of who was plaintiff's employer, and the effect of that determination, was squarely at issue in the case. It is clear from the summary judgment record that defendant did extensive discovery on the issue so the fact that discovery was closed when the court considered the motion to amend the complaint should not have weighed in favor of denying the motion. Nor should the fact that the case had reached the summary judgment stage have been determinative.

¶ 32. We recognize that we have previously affirmed a trial court's decision not to allow an amendment to pleadings after the other party has filed for summary judgment; indeed, the court

17

below cited our recent decision in <u>Gauthier v. Keurig</u> to that effect. 2015 VT 108, 200 Vt. 125, 129 A.3d 108. But <u>Gauthier</u> is distinguishable from this case. There, the plaintiff's initial three-count complaint alleged workers' compensation retaliation, breach of the implied covenant of good faith and fair dealing, and intentional infliction of emotional distress. He moved to amend his complaint after the defendant filed for summary judgment and sought to add two claims, one for breach of contract and a second for whistleblower retaliation. The trial court dismissed his motion, stating that the plaintiff lacked good cause to support the amendment because the two new claims were " 'not based upon any new information, and would require an entirely new round of summary judgment motions.' " <u>Id</u>. ¶ 44. We affirmed, agreeing with the trial court that the plaintiff's reason for the delay was not related to the two new claims he sought to add to his complaint. <u>Id</u>. ¶ 46. But in <u>Gauthier</u>, the amendment's timing was not dispositive. Instead, the tenuous relationship between the new and original claims and the plaintiff's inability to explain the timing of his amendment governed both the trial court's and our decision. In other words, the trial court properly denied the amendment because the defendant did not have notice of the plaintiff's new claims, nor did the new claims address issues that were clearly overlooked earlier in the litigation. See <u>Bevins</u>, 143 Vt. at 255, 465 A.2d at 283.

¶ 33.    Here, in contrast, plaintiff's claim in the motion to amend was addressed at length in defendant's own summary judgment motion, and addressing the motion became an application of the policy in Rule 15(b) for claims "tried by express or implied consent of the parties." When a party, such as defendant here, impliedly consents to trial of issues not raised in the pleadings, Rule 15(b) states that "amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time." Although we have never addressed the precise issue of the application of Rule 15(b) to the summary judgment stage of a case, at least two federal circuit courts have held that "when both parties squarely address a claim in their summary judgment briefs, it may be argued that the

18

complaint was constructively amended." Handzlik v. United States, 93 Fed. App'x 15, 17 (5th Cir. 2004) (quoting Whitaker v. T.J. Snow Co., 151 F.3d 661, 663 (7th Cir. 1998)).

¶ 34.    In Whitaker, the plaintiff was injured in a workplace accident when her hand was caught in a seam welder.  Her original complaint included a single claim under a warranty theory. Defendant filed a motion for summary judgment that briefed not only that issue but also a strict liability theory of the case, which plaintiff did not raise.  Because both plaintiff and defendant subsequently "squarely addressed the strict liability theory in their summary judgment briefs, the complaint was constructively amended to include that claim."  Whitaker, 151 F.3d at 663.  The court held that the strict liability claim was properly added such that the court could consider it on appeal.  Id.

¶ 35.    We concur with these cases and hold that when an issue enters a case during the summary judgment phase in part through the party later opposing its consideration, as here, the issue is effectively being tried based on the implied consent of the parties, and thus a contemporaneous motion to amend a pleading to include that issue should be freely granted. Indeed, the application of Rule 15(b) here is less likely to result in prejudice to the opposing party than the situation where, as occurred in Lillicrap, the motion to amend is made at trial.  The amendment here occurred prior to trial.[11]

¶ 36.    This brings us to the second ground the trial court used to deny the motion to amend the complaint—that the claim in the amendment to the complaint could not succeed because plaintiff failed to allege any agreement between plaintiff and defendant and conceded there was an agreement between defendant and his son, plaintiff's father. It is clear from the arguments and supporting materials that plaintiff and defendant had two different narratives to describe the

[11]  There is also an obvious relationship between our resolution of the first issue, where we are remanding for trial, and this issue which involves the content of that trial.  In view of our ultimate conclusion that a trial is required, Rule 15(b) is explicitly controlling, and Lillicrap is on point.

19

relationship between plaintiff and defendant and each was based on depositions and answers to interrogatories proper to consider at summary judgment. Defendant's narrative was that defendant hired his son to replace the surface materials on the roof of the building in which he had his office; his son in turn hired plaintiff and a friend of plaintiff to do the work; his son provided the tools, equipment, and materials necessary to do the work; and the son appeared daily to supervise the work. Plaintiff's narrative was that his father was an intermediary to get plaintiff and his friend to do work for defendant; plaintiff was promised "good money" for doing the work; defendant was himself an experienced roofer; after delivering the equipment, tools, and materials to complete the job, plaintiff's father never appeared again at the work site and never supervised the work; and defendant closely supervised plaintiff's work and controlled the manner and means of completing the job.

¶ 37.    Plaintiff's theory of liability is based on "the common law obligation of a master to furnish his servant a reasonably safe place in which to work and to keep such place in reasonable repair." Landing v. Town of Fairlee, 112 Vt. 127, 129, 22 A.2d 179, 180 (1941)[12]; see also Gerrish v. Savard, 169 Vt. 468, 473, 739 A.2d 1195, 1199 (1999) (citing Landing for proposition that employers have "a nondelegable duty to provide a safe work place"); Garrity v. Manning, 164 Vt. 507, 512, 671 A.2d 808, 811 (1996) (citing Landing as holding that employer has common law duty to provide safe workplace). A similar duty is now codified in 21 V.S.A. § 223(a), although no private right of action is created to enforce it. Green Mt. Power Corp. v. Comm'r of Labor &

---

[12] We recognize that in Landing and in other cases to which this Court considered applying Landing, the plaintiff did not prevail because of assumption of the risk. See Landing, 112 Vt. at 131, 22 A.2d at 181; see also Norton v. Lumbra, 127 Vt. 64, 69, 238 A.2d 628, 631 (1968); Painter v. Nichols, 118 Vt. 306, 310, 108 A.2d 384, 386 (1954). But see Cota v. Rocheleau, 120 Vt. 391, 398, 141 A.2d 426, 431 (1958) (reversing trial court's finding of assumption of risk as matter of law); Rheaume v. Goodro, 113 Vt. 370, 374, 34 A.2d 315, 317 (1943) (holding "evidence afforded no sufficient basis for holding as a matter of law" plaintiff assumed risk). We listed the defenses raised by defendant in ¶ 2, and assumption of risk was not one of them.

Indus., 136 Vt. 15, 22, 383 A.2d 1046, 1051 (1978). For our purposes, the terms master and servant and employer and employee are synonymous. Because plaintiff alleges that defendant was obligated to have workers' compensation insurance covering plaintiff as an employee, pursuant to 21 V.S.A. § 687, and failed to have such insurance, plaintiff argues that 21 V.S.A. § 618(b) applies and shifts the burden of proof on negligence and proximate cause to defendant and prevents defendant from relying, as a defense, on assumption of the risk or the negligence of the plaintiff under 12 V.S.A. § 1036. See id. § 618(b)(1), (2), (3).

¶ 38.    The trial court ruled as a matter of law that defendant was not plaintiff's employer because of the absence of an agreement between plaintiff and defendant and plaintiff's concession that there was an agreement between defendant's son and defendant.[13] With respect to plaintiff's common law claim that defendant had a duty to provide a safe place to work and negligently violated that duty, we look to the common law definitions of employer and employee. We have held that the "essential element in the relationship of master and servant is the right of control." Minogue v. Rutland Hosp., 119 Vt. 336, 338, 125 A.2d 796, 798 (1956); see also RLI Ins. Co. v. Agency of Transp., 171 Vt. 553, 554, 762 A.2d 475, 477 (2000) (mem.) (relying on "right to control" test). In Breslauer v. Fayston Sch. Dist., 163 Vt. 416, 424, 659 A.2d 1129, 1134 (1995), we relied upon the definitions in the Restatement (Second) of Agency. Section 2(1) defines a master as "a principal who employs an agent to perform service in his affairs and who controls or has the right to control the physical conduct of the other in performance of the service." Restatement (Second) of Agency § 2(1) (1958); see also Restatement (Third) of Agency

---

[13]    The decision is worded in terms of the "allegations" in plaintiff's complaint and plaintiff's concession. If looked at solely based on the language of the complaint, we find it to be an overly narrow reading of that language. For example, paragraph ten of the complaint says "Plaintiff agreed to work on the roof at the property for defendant for monetary compensation." Fairly read, this sentence says that plaintiff agreed to work for defendant for monetary compensation. Further, plaintiff's allegation in the new count, paragraph thirty-four, was that "defendant was Plaintiff's employer on the roof project at the property." These allegations are sufficient to meet notice pleading requirements. See Colby, 2008 VT 20, ¶ 9.

§ 7.07(3)(a) (2006) (defining employee as "an agent whose principal controls or has the right to control the manner and means of the agent's performance of work").

¶ 39. Although the right to control test is the primary indicator of an employer-employee relationship, it cannot govern where the proposed employee has specialized expertise that the proposed employer does not have. For example, in RLI Insurance Company, the proposed employee was a certified flight instructor, but the airport manager at the airport at which the proposed employee worked did not have flight instructor skills and could not supervise how the proposed employee provided flight instruction. RLI Ins. Co., 171 Vt. at 554, 762 A.2d at 477. In such a case, we look to other factors suggested in § 220 of the Restatement (Second) of Agency: "whether the worker supplies his own tools and place of work, whether the method of payment is by time or by job, whether the work is part of the regular business of the employer, and what is the length of employment." Id.

¶ 40. To understand how the definitions play out in this case, we return to the narratives of the parties as summarized above. Plaintiff relies primarily on who controlled his work and his deposition testimony that the work was controlled by defendant, who had replaced roofs as part of his business in the past, and not by defendant's son, who was not present at all when the work was being done. Defendant relies primarily on other facts: the agreement between defendant and his son; the son's supplying of the tools, equipment and materials; the son's hiring of plaintiff and the uncertainty of compensation. In our view, the presence of contradictory factors, the limitations and factual conflicts in the summary judgment record, and the range of inferences that could be drawn from the factual statements prevent a conclusion that there is no genuine issue of material fact and one party is entitled to judgment as a matter of law on the common law claim. Thus, as with the original complaint, summary judgment could not be awarded to defendant on the common law count added by the proposed amendment.

22

¶ 41. We also address, at least in brief, the applicability of 21 V.S.A. § 618(b) because that provision affects the strength of the common law claim. For example, the statute reverses the burden of proof and makes any negligence of plaintiff irrelevant to the jury's consideration of the case. Plaintiff has alleged that defendant was his employer and failed to comply with 21 V.S.A. § 687, the trigger for the applicability for § 618(b).

¶ 42. The definition of employer for purposes of the Workers' Compensation Act is contained in 21 V.S.A. § 601(3). We have consistently held that the statutory definition is broader than the common law definition. See, e.g., Frazier v. Preferred Operators, Inc., 2004 VT 95, ¶ 7, 177 Vt. 571, 861 A.2d 1130 (mem.). Our cases interpreting the statute suggest, however, that the expansion beyond the common law is because of language in the statute that defines a person as an employer of an independent contractor in certain circumstances not applicable here. See generally King v. Snide, 144 Vt. 395, 400-01, 479 A.2d 752, 754 (1984). In other respects, we conclude that the statutory section is consistent with the common law. As a result, our conclusion with respect to plaintiff's common law claim is also applicable to his claim with respect to 21 V.S.A. § 618(b).

¶ 43. For the above reasons, we hold that the superior court erred both in denying plaintiff's motion to amend his complaint and in granting summary judgement to plaintiff.

Reversed and remanded.

FOR THE COURT:

_____
Associate Justice

¶ 44. **ROBINSON, J., concurring in part and dissenting in part.** I cannot join the majority's conclusion that defendant, as the property owner, can be held liable pursuant to the common law of premises liability for injuries resulting when a roofer climbed onto a frost-covered

roof, stripped of shingles and covered with underlayment, thereby encountering dangers that were obvious and acknowledged by plaintiff before he climbed onto the roof. The majority's analysis suffers from two critical flaws: First, it misconstrues the scope of a landowner's common law duties concerning the condition of the premises in circumstances like this. Second, it rests on the assertion that defendant's familial relationship with plaintiff gave defendant "authority" over plaintiff such that defendant was legally accountable as landowner for plaintiff's choices.

¶ 45.    With respect to the scope of defendant's common law duties as a matter of premises liability law, it cannot be the case that a roofer who has stripped a roof of shingles and voluntarily climbs on to an obviously frost-covered underlayment can sue the property owner on account of the dangerous condition of the roof. In general, a possessor of land has no duty to protect an invitee from obvious dangers known to the invitee. The majority's understanding of the exception to this rule is not grounded in the reasoning of the Restatement, and would impose on a landowner the incongruous duty to a professional roofer to eliminate dew and frost from the stripped underlayment of the roof of the landowner's home. Such a duty would make no sense because a roofer who has stripped the shingles from the roof and is in the middle of working on it is in a far superior position to the landowner to assess the risks of working on the roof and take measures to mitigate or avoid the risk. The reality is, plaintiff's claim here is not a premises liability claim at all; it does not rest on any evidence or argument that defendant is liable for unreasonably dangerous conditions on the premises, but instead hinges on the fact that defendant urged plaintiff to do something dangerous.

¶ 46.    The two Restatement sections relied upon by the majority affirm that a landowner ordinarily has no duty to protect an invitee from obvious dangers. Section 343 of the Restatement (Second) of Torts provides that a possessor of land is subject to liability for physical harm caused to invitees by a condition on the land, but only if the possessor (a) knows or should discover the condition, and should realize that it involves an unreasonable risk of harm to invitees, (b) "should

24

expect that they will not discover or realize the danger, or will fail to protect themselves against it," and (c) fails to exercise reasonable care to protect them against the danger. Restatement (Second) of Torts § 343 (1965). Section 343A elaborates, explaining that a possessor of land is not liable to invitees "for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Id. § 343A.

¶ 47. The common law exception to this general rule imposes liability on the landowner in certain circumstances in which the landowner should anticipate the harm notwithstanding the obviousness of the danger. Both sections 343 and 343A contemplate that a landowner may be liable for injuries to invitees who encounter a known and obvious danger if the landowner should expect that the invitees would not discover or realize the danger, or would not protect themselves. As the commentary explains, in the ordinary case, "an invitee who enters land is entitled to nothing more than knowledge of the conditions and dangers" the invitee will encounter on the property. Id. § 343A cmt. e. However, there are "cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger." Id. § 343A cmt. f.

¶ 48. The Restatement explains that this exception applies where the landowner has reason to expect that the invitee may be distracted or may forget the obvious danger. Id. It provides the following examples:

> 2. The A Department Store has a weighing scale protruding into one of its aisles, which is visible and quite obvious to anyone who looks. Behind and about the scale it displays goods to attract customers. B, a customer, passing through the aisle, is intent on looking at the displayed goods. B does not discover the scale, stumbles over it, and is injured. A is subject to liability to B.

25

3. The A Drug Store has a soda fountain on a platform raised six inches above the floor. The condition is visible and quite obvious. B, a customer, discovers the condition when she ascends the platform and sits down on a stool to buy some ice cream. When she has finished, she forgets the condition, misses her step, falls, and is injured. If it is found that this could reasonably be anticipated by A, A is subject to liability to B.

4. Through the negligence of A Grocery Store a fallen rainspout is permitted to lie across a footpath alongside the store, which is used by customers as an exit. B, a customer, leaves the store with her arms full of bundles which obstruct her vision, and does not see the spout. She trips over it, and is injured. If it is found that A should reasonably have anticipated this, A is subject to liability to B.

Id. § 343A illus. 2-4.

¶ 49. The exception also may apply where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because a reasonable person would conclude that the advantages of doing so would outweigh the apparent risks. Id. § 343A cmt. f. For example:

5. A owns an office building, in which he rents an office for business purposes to B. The only approach to the office is over a slippery waxed stairway, whose condition is visible and quite obvious. C, employed by B in the office, uses the stairway on her way to work, slips on it, and is injured. Her only alternative to taking the risk was to forgo her employment. A is subject to liability to C.

Id. § 343A illus. 5.

¶ 50. This case clearly does not fall within the first class of cases subject to the exception. This is not a case in which plaintiff alleges that he forgot about the danger of the frost-covered roof because he was distracted or failed to remember the danger. Even considering the evidence in the light most favorable to plaintiff, he recognized the danger presented by the frost-covered roof and was planning to stop working for the day. These circumstances are nothing like those in

26

which an invitee can reasonably be expected to be distracted from or forget about an obvious danger.

¶ 51.    Nor does this case fall within the second kind of exception described in the Restatement involving risks a reasonable person would encounter because the advantages outweigh the disadvantages.  A property owner should not expect that a reasonable roofer, mid-job, will climb on to a frost-covered, underlayment-clad roof despite the obvious and recognized dangers.

¶ 52.    If we held otherwise, it is difficult to imagine what the landowner's duty would be in this case.  It clearly isn't a duty to warn, because there is no dispute that plaintiff was fully on notice of the danger.  But if a landowner's premises are unreasonably dangerous because in the middle of a roofing job a coating of dew and early frost settles on the underlayment remaining on the otherwise-stripped roof, how is the landowner to prevent that danger?  The roof is not like an excessively slippery waxed stairway that the landowner can strip and refinish with a more textured coating.  Nor is it like a slippery ship's deck lacking the customary cover of sufficient plywood for workers to stand on, see ante, ¶ 20 (citing Lubrano v. Royal Neth. S.S. Co., 572 F.2d 364 (2d Cir. 1978)), or unsecured plywood boards under a longshoreman's feet, see ante, ¶ 19 (citing Napoli v. Hellenic Lines, Ltd., 536 F.2d 505 (2d Cir. 1976).  In contrast to the cases relied on by the majority, there is no claim here that landowner failed to take reasonable steps to make the roof itself safer.  The landowner is not in a position to prevent the frost or to eliminate it from the roof.

¶ 53.    If anything, a roofer who has been and will continue to work on the roof, rather than the landowner, is in a far superior position to take steps to prevent, mitigate, or eliminate the danger from the frost on the roof.  The general risk of a stripped, wet roof is peculiarly within the knowledge of a professional roofer and not necessarily a landowner.  Courts have generally rejected similar claims.  For example, where a plaintiff, who was an equipment mechanic working as an independent contractor, was injured when his ladder slipped on the greasy floor in the

defendant business's rendering plant, the Missouri Supreme Court ruled that the defendant had no duty to the plaintiff relative to the slippery floor. Hokanson v. Joplin Rendering Co., Inc., 509 S.W.2d 107 (Mo. 1974). After discussing the fact that the property owner had no superior knowledge to the mechanic with respect to the dangers, the court explained:

> The ordinary care which an invitee must exercise to know and apprehend danger . . . on premises to which [the invitee] is invited must be considered in the light of the unusual circumstances surrounding cases such as this, where the invitee is actually in charge of the operation in which he is engaged, has control over the area of the premises where he is injured, is an experienced and skilled workman following his own devices in performing the work he has undertaken, and knows and appreciates the dangers involved in the use of ladders on a greasy floor . . . . In such case he is expected to employ his superior skill and knowledge to avoid injury to himself.

Id. at 114 (quotation omitted), see also Kelly v. Dairy Queen Enters, Inc., 581 S.W.2d 903, 906 (Mo. Ct. App. 1979) (holding that defendant restaurant owner had no legal duty to plaintiff, an independent contractor repairman, relative to danger of ladder slipping in snow, where plaintiff was experienced service provider using his own equipment and following his own devices and defendant had no superior knowledge with respect to state of ground under snow).

¶ 54.    Similarly, the Indiana Court of Appeals concluded that a business property owner had violated no duty to the employee of an independent contractor who was injured when falling from atop a tanker trailer while loading sludge from defendant's business into trucks. Armstsrong v. Cerestar USA, Inc., 775 N.E.2d 360, 372-73 (Ind. Ct. App. 2002). The court noted that the business property owner had no role in the loading of the sludge material into tankers, and the independent contractor that employed the plaintiff controlled the site and the employees. Id. On that basis, the court concluded that the defendant property owner did not have superior knowledge with regard to the potential danger of a person falling from atop a tanker trailer while loading sludge and could not be held liable on a premises liability theory. Id.

¶ 55.    The reality is, this is not really a premises liability case at all.  That is, plaintiff's claim is not really predicated on unreasonably dangerous conditions of the premises.  This Court faced a similar circumstance in connection with a case in which a contractor's employee sued a property owner after falling on a dirt mound serving as an access ramp to the contractor's trailer. Gero v. J.W.J. Realty, 171 Vt. 57, 757 A.2d 475 (2000).   The Court reasoned that the dirt mound was not a "condition of land," but was a means chosen by the contractor to access its trailer. Id. at 63, 757 A.2d at 479.  Here, the roof was stripped of shingles in the context of an ongoing project, and was covered with morning dew and early frost.  The heart of plaintiff's claim is not that defendant had the means and duty to prevent the roof from being slippery under these circumstances.  Nor is it that he didn't appreciate the dangers.  Plaintiff's claim is that his grandfather goaded him into doing something dangerous, and he was injured as a result.  This isn't a premises liability claim.  It is not tied to defendant's status as landowner, or a breach of any duty with respect to the condition of the land, but, rather, is tied to defendant's conduct in urging him to climb on the roof.

¶ 56.    That brings me to my second objection to the majority opinion: It hinges on defendant's asserted "position of authority" over plaintiff.  See ante, ¶ 13.  To the extent that authority arises from defendant's position as direct or "statutory employer" of plaintiff pursuant to the workers' compensation laws, plaintiff's theory is encompassed in his separate claim that he was injured in the workplace and defendant is liable as his employer.  But in connection with the premises liability claim, the argument seems to be that by virtue of his personal grandfather-grandson relationship with plaintiff, defendant was in a position of authority over plaintiff that impacted defendant's duties as a property owner.  As noted above, it's hard to understand how such a relationship would be relevant to a true premises liability claim.  But the majority's reliance on this relationship is troubling for another reason.  Defendant was undisputedly a mature, twenty-seven-year-old man at the time of the accident.  There is no evidence that he was not competent,

29

or had a special, cognizable vulnerability.  If there is a tort theory that supports liability when a defendant urges another competent adult to undertake dangerous activity, plaintiff has not pled or argued it.

¶ 57.　For these reasons, I dissent from the majority's analysis of the premises liability claim.  I would affirm that claim.  I concur in the majority's analysis of the trial court's denial of plaintiff's motion to amend his complaint and join the majority decision reversing that order.

¶ 58.　I am authorized to state that Justice Eaton joins this dissent.

_____

Associate Justice