REIBER, C.J., dissenting.
 

 ¶ 26. Grandparents may not have elected to exercise their right to control the means and methods of their son's work as property manager of their apartment building, but that is not the test. The test is whether they had a right to control his work. The nature of the relationship strongly suggests that they did. At minimum, particularly given the inferences inherent in the relationship suggesting a right to control, it is for the jury, not this Court, to make that determination. Because I disagree with the majority's determination as a matter of law that no employer-employee relationship existed between grandparents and father, and because I would also hold that the trial court erred by not allowing the jury to determine the foreseeability of the nature of the harm resulting from father bringing Evan to the work site, I respectfully dissent.
 

 ¶ 27. As the majority acknowledges, when determining whether a worker is an employee or an independent contractor in tort cases, we have applied the common-law "right to control" test.
 
 RLI Ins. Co. v. Agency of Transp.
 
 ,
 
 171 Vt. 553
 
 , 554,
 
 762 A.2d 475
 
 , 477 (2000) (mem.). Under that test, an employer-employee relationship is established "[i]f the party for whom the work is being done
 
 may
 
 prescribe the result, means and the methods by which the other shall do the work."
 

 Id
 

 .
 
 (emphasis added); see Restatement (Third) of Agency § 7.07(3) cmt. f (2006) ("For purposes of respondeat superior, an agent is an employee only when the principal controls
 
 or has the right to control
 
 the manner and means through which the agent performs work." (emphasis added) ); see also Restatement (Second) of Agency § 2(2) (1958) ("A servant is an agent employed by a master to perform service in his [or her] affairs whose physical conduct in the performance of the service is controlled
 
 or is subject to the right to control
 
 by the master." (emphasis added) ).
 

 ¶ 28. It is difficult for me to imagine a stronger case of a right to control than the instant situation, where the parents are the owners/landlords of an apartment building and their son is the local property manager acting on their behalf in the operation of the building and dealings with the tenants. In discussing the rationale for making masters vicariously liable for the torts of their servants acting within the scope of employment, the Restatement notes that historically "the servant was a member of the family or of the mercantile household" and that "intimacy of relation is still the basic idea which today distinguishes the servant from the non-servant." Restatement (Second) of Agency § 219 cmt. a. The Restatement further reasons as follows:
 

 [I]t may be said that a servant is an agent standing in such close relation to the principal that it is just to make the latter respond for some of his physical acts resulting from the performance of the principal's business.
 

 The conception of the master's liability to third persons appears to be an outgrowth of the idea that within the time of service, the master can exercise control over the physical activities of the servant. From this, the idea of responsibility for the harm done by the servant's activities followed naturally. The
 
 assumption of
 

 control
 
 is a usual basis for imposing tort liability when the thing controlled causes harm.
 

 Id
 

 .
 
 (emphasis added).
 

 ¶ 29. A jury could certainly make such an assumption in this case, where the son is managing his parents' rental property. Indeed, discussing the Restatement factors, we have stated that "[i]f the work is neither ancillary nor independent of the employer's business, it is likely that the worker is an employee."
 
 RLI Ins.
 
 ,
 
 171 Vt. at 555
 
 ,
 
 762 A.2d at
 
 478 ; see Restatement (Second) of Agency § 220(2) cmt. i ("[I]f the occupation is one which ordinarily is considered as a function of the regular members of the household staff or incident of the business establishment of the employer, there is an inference that the actor is a servant.");
 

 id
 

 .
 
 cmt. l ("If the work is done upon the premises of the employer with his machinery by workmen who agree to obey general rules for the regulation of the conduct of employees, the inference is strong that such workmen are the servants of the owner, and this inference is not necessarily rebutted by the fact that the workmen are paid by the amount of work performed or by the fact that they supply in part their own tools or even their assistants.").
 

 ¶ 30. The majority dutifully states that the determination of the relationship is
 normally a jury question, see
 

 id
 

 .
 
 cmt. c, and that plaintiffs as the nonmoving party are given the benefit of all favorable inferences with respect to grandparents' summary judgment motion, but it fails to apply these principles here. Cf.
 
 LeClair v. LeClair
 
 ,
 
 2017 VT 34
 
 , ¶ 40, --- Vt. ----,
 
 169 A.3d 743
 
 (reversing grant of summary judgment regarding existence of employer-employee relationship, given "the presence of contradictory factors, the limitations and factual conflicts in the summary judgment record, and the range of inferences that could be drawn from the factual statements"). Indeed, in my view, the majority is applying inferences against plaintiffs in finding no employer-employee relationship as a matter of law.
 

 ¶ 31. Grandparents own the apartment building as a money-making venture. They paid their son a monthly management fee for an open-ended time period to manage the property by interacting with the tenants and keeping the rental units operational. Father obtained permission from grandparents before doing any work on the property. To accomplish that work, father at times brought family members, including Evan, onto the property to work for pay. Grandparents were aware of this and left the hiring and supervision of workers on the property to father. These basic facts were sufficient to leave for the jury the question of whether an employer-employee relationship existed between grandparents and father. A reasonable jury could reasonably infer from these facts that grandparents had the right to control the means and methods of father's work at their apartment building, so as to make them potentially liable for father's conduct in hiring and/or supervising Evan on the property.
 

 ¶ 32. Finally, although I do not need to get into detail in the context of this dissent, I would reverse the superior court's summary judgment ruling because, in addition to disagreeing with the majority's holding here, I believe that the trial court erred by determining as a matter of law that the nature of the harm in this case was not foreseeable. I would adopt the American Law Institute's view that foreseeability is primarily a consideration in determining whether a duty has been breached or whether the defendant's conduct proximately caused the harm-both of which are ordinarily factual determinations within the purview of the jury. See Restatement (Third) of Torts: Physical & Emotional Harm § 7 cmt. j (2010) (stating that proper role for foreseeability is not in determining whether duty exists, which is purely legal question regarding whether to impose liability in category of cases, but rather in making factual determination as to whether duty was breached); see, e.g.,
 
 Gipson v. Kasey
 
 ,
 
 214 Ariz. 141
 
 ,
 
 150 P.3d 228
 
 , 231 (2007) (adopting position stated in Restatement (Third) of Torts § 7);
 
 Thompson v. Kaczinski
 
 ,
 
 774 N.W.2d 829
 
 , 834-35 (Iowa 2009) (same);
 
 A.W. v. Lancaster Cty. Sch. Dist. 0001
 
 ,
 
 280 Neb. 205
 
 ,
 
 784 N.W.2d 907
 
 , 914-18 (2010) (same); see also
 
 LeClair
 
 ,
 
 2017 VT 34
 
 , ¶ 10, --- Vt. ----,
 
 169 A.3d 743
 
 (citing Restatement (Third) of Torts: Physical & Emotional Harm § 7 for proposition that "whether a duty is owed is primarily a legal question in which the Legislature or courts 'apply general categorical rules' establishing or withholding liability");
 
 Baisley v. Missisquoi Cemetery Ass'n
 
 ,
 
 167 Vt. 473
 
 , 480,
 
 708 A.2d 924
 
 , 928 (1998) (stating that where there is no settled rule of diligence, "negligence is ordinarily a question for the jury").
 

 ¶ 33. The parties in this case submitted conflicting facts with multiple possible inferences regarding the foreseeability of the harm. Given the conflicting facts, the jury should have been allowed to consider questions surrounding the foreseeability of the harm, which require factual determinations
 as to breach of duty and/or proximate cause rather than a legal determination of duty. Accordingly, I respectfully dissent.