2006 VT 82

# Hunters, Anglers and Trappers Association of Vermont, Inc. v. Winooski Valley Park District

[913 A.2d 391]

· No. 05-056

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed November 17, 2006

*Jacob B. Perkinson*, South Burlington, for Plaintiff-Appellant.

*Richard C. Whittlesey* of *Roesler, Whittlesey, Meekins & Amidon*, Burlington, for Defendant-Appellee.

¶ 1. **Johnson, J.** This appeal arises from a challenge by plaintiff Hunters, Anglers and Trappers Association of Vermont, Inc. ("HAT") to the Winooski Valley Park District's posted ban on hunting and trapping on lands within the District. The superior court upheld the hunting ban, granting summary judgment to the District on HAT's principal claim. HAT contends the court erred by: (1)

concluding that the District possessed the authority to prevent hunting and trapping within the District; (2) relying on evidence outside the record, and refusing to order discovery, regarding the issue of whether hunting and trapping could be accomplished safely within the District; (3) dismissing as moot HAT's claims that the District lacked authority to ban possession of firearms within the District; and (4) failing to rule on HAT's motion to amend its complaint to add further claims against the District. We affirm.

¶ 2. The relevant facts, which are not in dispute, are as follows. HAT is a nonprofit corporation "comprised of people and entities interested in the activities of hunters, anglers and trappers in Vermont." The District is a union municipal district containing portions of the municipalities of Burlington, Colchester, Essex, Jericho, South Burlington, Williston, and Winooski. It was chartered in 1972 to engage in "[t]he planning of its lands and waters in the Winooski Valley for the purposes of conservation, recreation, the establishment of parks and the preservation of natural areas" and "[t]he acquisition and management of lands and waters in the Winooski Valley." Under the statute allowing formation of union municipal districts, such districts possess all of the powers of a municipal corporation upon their formation, 24 V.S.A. § 4865, including the power to acquire real property. 10 V.S.A. § 6302. The District has acquired an ownership interest in approximately 1,730 acres of land, and it leases an additional 134 acres. The District manages this land as parkland that is open to the public for a variety of uses. The District does not allow hunting, shooting, or trapping on any District property, and it has posted signs to that effect according to the requirements applicable to private property owners under 10 V.S.A. § 5201. Prior to the commencement of this action, the District's signs prohibiting hunting also included a ban on the possession of firearms.

¶ 3. In February 2003, HAT filed a complaint seeking an injunction to prevent the District from regulating hunting and trapping. HAT also sought to enjoin the District from banning the possession of firearms on its lands. The complaint alleged that the District's ban on hunting, trapping, and firearm possession violated both the Vermont Constitution's protection of the right to hunt and 24 V.S.A. § 2295, which prohibits municipalities from directly regulating hunting or trapping. During the course of the ensuing litigation, the District changed its policy to eliminate its ban on the possession of firearms, and began changing the wording of its signs accordingly. HAT and

the District filed cross-motions for summary judgment regarding the hunting and trapping ban. HAT also filed a "conditional" motion to amend its complaint, seeking to add further claims in the event that the court ruled in favor of the District on the original claims. These additional claims alleged that the District's actions violated due process and the Vermont Consumer Fraud Act, and requested declaratory relief stating that the District did not have the right to ban possession of firearms on its lands.

¶ 4. In July 2003, the superior court ruled that the District's elimination of its ban on the possession of firearms would render that part of the litigation moot, assuming the District followed through by changing the wording of its signs. In October 2003, following further submissions related to the District's progress toward changing its signs, the court ruled that the firearm possession claim was moot. In the same order, the court ruled that the District possessed legal authority to prohibit hunting and trapping on its own lands. The court did not rule on HAT's motion to amend its complaint. Instead, it gave HAT until the end of October 2003 to show cause why the action should not be dismissed, given its rulings in favor of the District. Within that period, HAT submitted affidavits from hunters attesting that it was safe to hunt on the District's lands. HAT's submission sought to contradict any assertion that hunting was necessarily unsafe on the District's lands, and stated that "good cause exists to allow the requested amendment of its Complaint and that this case should not be dismissed." In January 2005, the court entered final judgment in favor of the District. This appeal followed.

I.

¶ 5. HAT's principal claim on appeal is that the court erred by concluding that the District has the legal authority to prohibit hunting and trapping on its own lands. We review this question of law de novo. *Charbonneau v. Gorczyk*, 2003 VT 105, ¶ 2, 176 Vt. 140, 828 A.2d 117. HAT's assertion rests on the Vermont Constitution, general principles of local government law, and a statutory provision that specifically prohibits municipalities from regulating hunting and trapping.

¶ 6. First, HAT argues that Chapter II, § 67 of the Vermont Constitution guarantees the right to hunt and trap. Section 67 provides:

> The inhabitants of this State shall have liberty in season-
> able times, to hunt and fowl on the lands they hold, and on
> other lands not inclosed, and in like manner to fish in all boat-
> able and other waters (not private property) under proper
> regulations, to be made and provided by the General Assem-
> bly.

Vt. Const. ch. II, § 67. We agree with HAT that this provision provides constitutional hunting rights, but those rights are not necessarily implicated in this case. Section 67 vests the Legislature with the power to regulate hunting and trapping even on privately held lands, and we have previously held that the Legislature may delegate this power to some other "body or person." *Elliott v. Fish & Game Comm'n*, 117 Vt. 61, 69, 84 A.2d 588, 593 (1951). Thus, provided that the Legislature has properly delegated its authority to the District, the District's regulation of hunting and trapping will not violate any constitutional right.

¶ 7. HAT next relies on the general principle that munici-palities may not act without explicit authorization from the state. HAT is correct that "[w]e have consistently adhered to the so-called Dillon's rule that 'a municipality has only those powers and functions specifically authorized by the legislature, and such additional functions as may be incident, subordinate or necessary to the exercise thereof.'" *In re Ball Mountain Dam Hydroelectric Project*, 154 Vt. 189, 192, 576 A.2d 124, 126 (1990) (quoting *Hinesburg Sand & Gravel Co. v. Town of Hinesburg*, 135 Vt. 484, 486, 380 A.2d 64, 66 (1977)). The limitations imposed by Dillon's Rule are not dispositive here, however. If the Legislature has delegated sufficient authority to the District to satisfy the demands of the Vermont Constitution, it follows that the District needs no further legislative approval under Dillon's Rule. Moreover, Dillon's Rule is subject to the exception that when the character of the municipality's actions is "proprietary" and not "governmental," the municipality's power is not so limited. See 1 J. Dillon, Municipal Corporations § 109, at 182 (5th ed. 1911) (stating that "[o]ver all [a municipal corporation's] civil, political, or govern-mental powers, the authority of the legislature is, in the nature of things, supreme and without limitation," but that *"in its proprietary or private character* . . . the [municipal] corporation is to be regarded . . . as a private corporation, or at least not public in the sense that the power of the legislature over it or the rights represented by it, is omnipotent" (emphasis in original)). While the proprietary functions of a municipality are often difficult to distinguish from its govern-

mental powers, *id.* § 110, at 183, the distinction is especially clear with respect to the municipality's ownership of property. See *id.* § 109, at 181 (stating that the distinction between governmental and proprietary functions "is highly important, and is frequently referred to, particularly in the cases relating to the property . . . of municipal corporations"). Since the District owns or leases all of the lands in question, Dillon's Rule places no limitation on the District's ability to restrict hunting and trapping.

¶ 8. HAT's final assertion as to the District's authority relies on 24 V.S.A. § 2295, which states, in relevant part, "Except as otherwise provided by law, no town, city or incorporated village, by ordinance, resolution or other enactment, shall directly regulate hunting, fishing and trapping or the possession . . . of traps, firearms, ammunition, or components of firearms or ammunition." There is no question that this statute, standing alone, would prohibit any municipality from enacting regulations limiting hunting and trapping within its boundaries. The District, however, points out that § 2295 does not apply where "otherwise provided by law," and cites two sources of legal authority to implement a hunting and trapping ban despite the restrictions of § 2295. First, it relies on 24 V.S.A. § 2291(8), which states that municipalities have the authority "[t]o regulate or prohibit the use or discharge, but not possession of, firearms within the municipality or specified portions thereof." Section 2295 explicitly provides that it is not intended to limit this power. See 24 V.S.A. § 2295 ("This section shall not limit the powers conferred upon a town, city or incorporated village under section 2291(8) of this title."). Second, the District argues that it possesses the power to post signs prohibiting hunting and trapping on its own lands. 10 V.S.A. § 5201(a) ("An owner . . . who desires to protect his land or waters over which he has exclusive control, may maintain notices stating, if he wishes to prohibit the taking of game and wild animals, that shooting and trapping are prohibited . . . .").

¶ 9. While 24 V.S.A. § 2291(8) undoubtedly gives the District the power to regulate or prohibit the discharge of firearms, it does not appear to allow the District to regulate other means of hunting besides shooting. We must therefore determine whether 24 V.S.A. § 2295, by making it impermissible for a municipality to "directly regulate" hunting and trapping, also prohibits the District from posting its land pursuant to 10 V.S.A. § 5201. We conclude that the District is within its authority to post its land against hunting and

trapping. Our conclusion is based on a combination of several statutory provisions authorizing the District to manage its own land in the interest of conservation. These provisions have two key effects. First, they establish that the Legislature has affirmatively delegated sufficient authority to the District that it may ban hunting and trapping on its own lands without violating the Vermont Constitution or Dillon's Rule. Second, they establish that 24 V.S.A. § 2295 does not prohibit the District from taking such action.

¶ 10. The Legislature has authorized municipalities to acquire interests in land, 10 V.S.A. § 6302, including fee simple and leasehold interests. *Id.* § 6303(a)(1), (6). The right to acquire land in fee simple was thus among the rights of the District upon its formation. See 24 V.S.A. § 4865 (stating that upon approval by the participating municipalities, a "union municipal district shall become a body politic and corporate with the powers incident to a public corporation"). Section 6307(a) of Title 10 also provides that a municipality that owns land, and thus, the District, "may institute injunction proceedings to enforce the rights of the municipality, . . . and may take all other proceedings as are available to an owner of real property under the laws of this state to protect and conserve its right or interest."

¶ 11. The District argues that 10 V.S.A. § 6307 implicitly incorporates 10 V.S.A. § 5201(a), and thus, allows municipalities to post their land against hunting and trapping. According to this reasoning, posting land against hunting and trapping is a proceeding to protect and conserve the District's right or interest. HAT argues that posting is not among the proceedings referred to in 10 V.S.A. § 6307 because prohibiting hunting and trapping is not a permissible "right or interest" of the District. We agree with the District that its rights and interests can include limitations on hunting and trapping. First, the District's charter explicitly provides that it should engage in planning for "the purposes of conservation, recreation, the establishment of parks and the preservation of natural areas." More importantly, the Legislature has stated its purpose in allowing municipalities to acquire interests in land:

> It is the purpose of [10 V.S.A. §§ 6301-6309] to encourage and assist the maintenance of the present uses of Vermont's agricultural, forest, and other undeveloped land and to prevent the accelerated residential and commercial development thereof; to preserve and to enhance Vermont's scenic natural resources; to strengthen the base of the recreation industry

and to increase employment, income, business, and investment; and to enable the citizens of Vermont to plan its orderly growth in the face of increasing development pressures in the interests of the public health, safety and welfare.

10 V.S.A. § 6301. All of the objectives listed in § 6301 are interests that a municipality may pursue by enforcing its property rights under § 6307. The fact that the list includes the preservation and enhancement of Vermont's scenic natural resources, among other related interests, seems sufficient to justify including the posting of land against hunting and trapping among the permissible proceedings a municipality may take to protect an interest in land. We recognize that hunting and trapping are often consistent with the interests of conservation and preservation, and there is no question that it would be within the District's discretion to allow hunting and trapping on its lands, but the intrinsic value of hunting and trapping is not at issue here. It is just as plainly within the District's discretion under § 6301 to conclude that prohibiting hunting and trapping will best serve the interests listed in the statute, and therefore, it may post its land to protect those interests.

¶ 12. That the Legislature has provided the District with the affirmative authority to post its land, however, does not necessarily resolve HAT's central objection to the hunting and trapping ban. HAT argues that notwithstanding any affirmative power the above-cited statutes may grant to the District, allowing the District to ban hunting and trapping on its own land would be inconsistent with the provisions of 24 V.S.A. § 2295. We cannot agree. Section 2295 prohibits municipalities from directly regulating hunting and trapping, "*except as otherwise provided by law.*" (Emphasis added.) Here, the law "otherwise provide[s]" that the District may post its own lands to prohibit hunting and trapping, and thus, the prohibition in § 2295 does not apply. Section 2295 explicitly refrains from superseding contrary statutory provisions, so even if we were to conclude that posting land against hunting and trapping was "direct regulation," there would be nothing in the statute to prevent municipalities from posting their land.

¶ 13. Allowing these two provisions to coexist seems entirely consistent with the purposes of § 2295. Without question, the Legislature intended to prevent a town from banning hunting on private property, as well as from issuing hunting licenses, collecting

associated fees, or setting rules for hunting within the town. Such regulation would risk interference not only with the state's regulatory prerogatives, but also with the private property rights protected by Chapter II, § 67 of the Vermont Constitution. Neither of these concerns is implicated when a town sets conditions on the use of its own land. A town's restrictions on hunting in a public park do not interfere with anyone's right to hunt or allow hunting on his or her own property, and they fit within the state's regulatory regime just as well as any other property owner's posting pursuant to 10 V.S.A. § 5201. It is consistent for the Legislature to prohibit direct regulation of hunting and trapping, as it has through 24 V.S.A. § 2295, but also entitle municipalities to manage their own lands in the interests of recreation and conservation, as it has through 10 V.S.A. §§ 6301-6309. Because the District owns or leases all of the land within its boundaries, its management practices have the effect of banning hunting and trapping throughout those boundaries, but the Legislature has not prohibited the District from managing its land in that way. Thus, we conclude that the District's actions in posting its own land to ban hunting and trapping are not only affirmatively authorized by the Legislature, but also free of any statutory or constitutional prohibition.

## II.

¶ 14. Our conclusion above makes it unnecessary to address HAT's assertion that the superior court relied on evidence outside the record and failed to order necessary discovery. HAT contends that the court drew conclusions with respect to the safety of hunting and trapping within the District that were not supported by the undisputed facts. While this may be true, the court did not rely on those conclusions in reaching its ultimate decision. The court made certain statements indicating that hunting on the District's lands would be unsafe, but it based its legal conclusion on the fact that the District owns the lands in question, and possesses the same right to post against hunting and trapping as does a private landowner. This conclusion did not require any consideration of whether it would be safe to hunt on the District's lands. The District could consider that question in determining whether to post its lands against hunting, as could any other landowner. We are not concerned here, however, with the District's balancing of the often competing interests of recreation, conservation, and safety. Instead, we are concerned only with the District's legal authority to engage in such balancing when

doing so implicates the interests of Vermont's hunters. We agree with the superior court that the District possesses such authority with respect to its own lands, and thus, we need not determine whether the court erred in its consideration of evidence.

## III.

¶ 15. We next address HAT's contention that the superior court should not have dismissed its challenge to the District's firearm possession ban as moot. During the pendency of the action, the District began altering its signs and publications to reflect its policy of allowing, instead of prohibiting, the possession of firearms on its property. HAT argues that its claim is still live because the District continues to assert the right to ban possession of firearms, as opposed to regulating only the discharge of firearms. "[A] case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Doria v. Univ. of Vt.*, 156 Vt. 114, 117, 589 A.2d 317, 319 (1991) (quotations omitted). An actual controversy must exist at all stages of the case, "not merely at the time the plaintiff originally filed the complaint." *Id.* HAT's claim is moot because the policy the claim challenges no longer exists.

■■ ¶ 16. HAT argues that despite its mootness, its claim should survive because it fits within the narrow exception allowing review of moot claims that are "capable of repetition, yet evading review." *Id.* at 118, 589 A.2d at 319 (quotations omitted). The test for this exception requires, first, that "'the challenged action [must be] in its duration too short to be fully litigated prior to its cessation or expiration,'" and second, that "'there [must be] a reasonable expectation that the same complaining party [will] be subjected to the same action again.'" *State v. Tallman*, 148 Vt. 465, 469, 537 A.2d 422, 424 (1987) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)). HAT's claim meets neither requirement. In the event the District chooses to reinstate its policy following the completion of this action, HAT provides no reason why it would not be able to challenge the policy effectively. More importantly, HAT fails to demonstrate any expectation that the District will reinstate the policy. HAT ignores the District's repeated statements that it does not intend to regulate the carrying of firearms on its lands. Instead, it focuses on a single statement by the District that despite its decision to change the

policy, it does not concede that it lacks authority to regulate the possession of firearms on its lands. We agree with the superior court that this statement alone does not provide cause to allow HAT to continue pursuing its moot claim.

## IV.

¶ 17. As a final matter, we must address HAT's contention that the court erred by failing to rule on its motion to amend its complaint to add further claims against the District. We review this issue according to an abuse of discretion standard. *Bevins v. King*, 143 Vt. 252, 254-55, 465 A.2d 282, 283 (1983). The superior court did not explicitly deny HAT's motion, and it did not offer any reasoning supporting such a denial, but we assume that the court intended to deny HAT's motion, since it entered final judgment dismissing the entire action. Vermont Rule of Civil Procedure 15(a) provides that a party may amend its pleadings by leave of the court, and that "leave shall be freely given when justice so requires." The court's decision whether to grant permission to amend is discretionary, but "[w]hen there is no prejudice to the objecting party, and when the proposed amendment is not obviously frivolous nor made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny the motion." *Bevins*, 143 Vt. at 254-55, 465 A.2d at 283. As the three additional causes of action raised by the proposed amended complaint were all either without merit or disposed of by the court's summary judgment ruling, it would have been within the court's discretion to deny HAT's motion to amend.

¶ 18. First, HAT's amended complaint attempts to convert the moot claim based on the District's prohibition of firearm possession from a request for injunctive relief to a declaratory judgment action. Declaratory relief is available only when there is an actual or justiciable underlying controversy; otherwise, "a declaratory judgment is merely an advisory opinion which we lack the constitutional authority to render." *Doria*, 156 Vt. at 117, 589 A.2d at 318. As we have concluded above, there was no longer a justiciable controversy once the District changed its policy, and HAT provided no basis for concluding that there was a "threat of actual injury to a protected legal interest." *Town of Cavendish v. Vt. Pub. Power Supply Auth.*, 141 Vt. 144, 147, 446 A.2d 792, 794 (1982) (stating that declaratory relief is available only if there is a threat of injury). The superior court's initial ruling that there was no justiciable controversy

regarding the firearm possession ban was sufficient to dispose of this count of the amended complaint.

¶ 19. Second, HAT's amended complaint adds a claim that the District, by exercising the authority of its member municipalities to regulate hunting and trapping, "circumvent[ed] the requirements of the due process of law by either: 1) enacting regulations the municipalities standing alone could not legitimately promulgate; or 2) assigning the limited legislative rights granted to these municipalities by the Legislature to unelected boards and administrative appointees." The superior court concluded, in its summary judgment ruling, that the District was acting pursuant to its statutory authority to act as a landowner in posting its land against hunting and trapping. This conclusion precludes any claim that the District's actions were an attempt to "circumvent" due process. The municipalities participating in the District's formation had the authority to take the actions the District took, as well as the authority to form the District as they did. HAT's new claim simply rephrases, using the terminology of due process, its principal claim that the District lacked legal authority to regulate hunting. The superior court would have been within its discretion to deny HAT's motion to amend its complaint by adding this claim.

¶ 20. Finally, HAT included a claim that the District, by using public funds for "private, exclusionary purposes," violated Vermont's Consumer Fraud Act. This claim lacks merit on its face. The District's rules certainly exclude hunting as a permissible use of the land, but the same rules apply to every member of the public, and the District continues to allow any member of the public to use the land. HAT alleges that the District's hunting ban was implemented for some private purpose, but it does not identify any purpose for the District's hunting ban that is not among the permissible objectives of public land management. We have held that the District was within its rights to place conditions on the use of its lands, which the Legislature has explicitly authorized the District to manage in the interest of conservation, among other interests. Whether or not HAT agrees with the District's policies, the District's exclusion of one possible use of publicly owned land is not inherently fraudulent or discriminatory. It would not have been an abuse of the superior court's discretion to deny HAT's motion to amend its complaint to add this claim. The court was therefore correct to enter final judg-

ment against HAT after having granted summary judgment to the District on the claims in HAT's original complaint.

*Affirmed.*

¶ 21. **Burgess, J.,** concurring in result. I agree that a municipal park district, like any landowner, may post its land against hunting and trapping pursuant to 10 V.S.A. § 5201. I do not agree, however, with the majority's proposition that the Legislature has delegated its pervasive regulation of hunting and trapping to the District for conservation purposes. Even if it were apparent how a total ban on hunting and trapping serves a rational wildlife conservation interest, absent a more explicit delegation to the District, that topic seems entirely preempted by the Legislature's comprehensive regulatory scheme in that regard. See 10 V.S.A. chapters 101-123; App. §§ 2-48.[1] The majority characterizes the posting of land under 10 V.S.A. § 5201(a) as an enforcement "proceeding" available to the District by virtue of its landowner status pursuant to 10 V.S.A. § 6307, *ante,* ¶ 11, but there is no "proceeding" necessary to post lands except, perhaps, a trip to the hardware store. Nor does it appear how posting a ban on hunting and trapping serves the statutory purpose of 10 V.S.A. § 6301 "to preserve and to enhance Vermont's scenic natural re-sources," as understood by the majority, unless it is to enhance the observation of such scenic resources by preserving the observers from hunting and trapping mishaps. Such interpretive efforts are strained, at best, and appear unnecessary when there is a more direct route to the same common sense end.

¶ 22. Defendant District is a "union municipal district" that "may hold and convey real . . . estate for the use of the district," 24 V.S.A. § 4865, and, in pertinent part, is possessed of all powers enjoyed "by *any* of its participating municipalities." 24 V.S.A. § 4866(8) (emphasis added). Most of the municipal members are expressly authorized by their legislative charters to establish parks,[2] and plaintiff's complaint

---

[1] The majority's citation of 10 V.S.A. § 6307(a), *ante,* ¶ 10, enabling municipalities to "institute injunction proceedings . . . and . . . take all other proceedings as are available to an owner of real property under the laws of this state to protect and conserve its right or interest," reflects a clear legislative intent that a municipality may seek legal redress or enforcement of its rights as a landowner, but is no delegation of legislative authority over wildlife conservation.

[2] 24 V.S.A. App. Ch. 3, § 48(36) (Burlington); Ch. 113, § 103(c) (Colchester); Ch. 117, § 103(b) (Essex); Ch. 13, § 103(b) (South Burlington) and Ch. 17, § 2.4(b)(1) (Winooski). There is no charter for Jericho Village, Ch. 231 reserved; while the

alleges, without challenging its validity, that the declared purpose of the District's charter under 24 V.S.A. § 4865 includes "recreation, [and] establishment of parks." All Vermont municipalities are authorized to acquire and preserve undeveloped land. 10 V.S.A. §§ 6301 and 6302(a).

¶ 23. Dillon's Rule not only limits municipalities to "those powers and functions specifically authorized by the legislature" as argued by plaintiff in this instance, but is also authority for the implied "additional functions as may be incident, subordinate or necessary to the exercise" of such express powers by the municipality. *Hinesburg Sand & Gravel Co. v. Town of Hinesburg*, 135 Vt. 484, 486, 380 A.2d 64, 66 (1977). Having established the recreation or park area in this case, the District must then have at least implied authority to ban hunting and trapping within as incident and necessary to its management of the area. Owning and controlling the same land, and absent legislative command to the contrary, the District should also be independently able to post its land under 10 V.S.A. § 5201. The statutory proscription that no municipality "shall directly regulate hunting . . . and trapping" is expressly preconditioned by the phrase *"[e]xcept as otherwise authorized by law."* 24 V.S.A. § 2295 (emphasis added). By its own terms, the prohibition is subordinate to the law of Dillon's Rule and the posting statute, and presents no impediment to the District's ban on hunting and trapping within the park.[3]

¶ 24. Plaintiff's argument that a landowner's right to post land under 10 V.S.A. § 5201 can never extend to a municipal landowner, because municipalities are foreclosed from regulating hunting and trapping on public lands by 24 V.S.A. § 2295, is not persuasive. It is not disputed that the District owns most, and leases small amounts, of the land at issue. The right to post lands is statutorily granted to any "owner" of land, or "person" enjoying "exclusive control" over lands, 10 V.S.A. § 5201(a), and the statutory term "person" is expressly defined to include a "municipality." 1 V.S.A. § 128.[4]

---

Williston charter is silent about parks, but provides that Williston "may acquire real property." Ch. 156, § 9(b).

[3] The statute continues to prohibit a municipality's direct regulation of hunting and trapping upon private lands within municipal boundaries.

[4] "In the construction of statutes," this definition "shall be observed, unless such construction is inconsistent with the manifest intent of the general assembly or repugnant to the context of the same statute." 1 V.S.A. § 101. Nothing in 10 V.S.A.

Applying § 2295 to bar posting, as proposed by plaintiff, ignores that statute's express excepting clause, Dillon's Rule and 10 V.S.A. § 5201(a). Plaintiff's construction of the statute would preclude cities, towns and villages from prohibiting trapping and nonfirearm hunting within public parks, commons, swimming pools and the like, leaving citizens (and their dogs and children) to wear bright orange, to duck and to watch their step when walking, biking, snowshoeing, skiing, feeding pigeons, swimming or playing sports within municipal parks and recreation fields. This kind of overbroad statutory construction "that leads to absurd consequences must always be avoided if possible." *Riley v. Riley's Estate*, 114 Vt. 297, 300, 44 A.2d 153, 155 (1945).

¶ 25. Accordingly, plaintiff's construction should be rejected and the judgment below should be affirmed.

---

§ 5201 is repugnant to the inclusion of municipalities as persons owning or controlling lands. Given the excepting clause in 24 V.S.A. § 2295, and the absurd result otherwise, see *infra*, nothing in that statute is manifestly contrary to following the statutory definition including a municipality as a "person" entitled to post land under 10 V.S.A. § 5201.