**ORIGINAL PAPER**
RUTLAND SUPERIOR COURT

STATE OF VERMONT
RUTLAND COUNTY

JUL 3 1 2008

| | | |
|---|---|---|
| MARY BLOOMER | ) | **Rutland Superior Court** |
| | ) | **Docket No. 476-7-07 Rdcv** |
| v. | ) | |
| | ) | |
| DAVID LAMPHERE, CORD LAMPHERE, | ) | |
| and GEORGE LAMPHERE, as Trustees of the | ) | |
| Lamphere Family Trust | ) | |

## DECISION
### Defendants' Motion for Summary Judgment, filed Feb. 1, 2008
### Plaintiff's Motion to Amend Complaint, filed Apr. 11, 2008

Plaintiff Mary Bloomer owns a seasonal camp on Lake Bomoseen in Castleton, Vermont. She seeks to establish ownership of several strips of land adjacent to her property by virtue of adverse possession. Defendants Trustees of the Lamphere Family Trust are the record title holders to the disputed land, and contend that the Bloomers have not shown sufficient facts to support their claim for adverse possession. The present matters before the court are (1) Defendants' Motion for Summary Judgment, filed February 1, 2008 by Attorney W. Scott Fewell, and (2) Plaintiff's Motion to Amend Complaint to add claims for acquiescence and prescription, filed April 11, 2008 by Attorney William J. Bloomer.

*Defendants' Motion for Summary Judgment*

For the purposes of the Motion for Summary Judgment, the court has viewed all of the evidence in the light most favorable to Plaintiff as the non-moving party. Viewed in that light, the material facts are as follows.

The Bloomer parcel is 4 rods (66 feet) by 8 rods (132 feet). It is bounded on the west by Lake Bomoseen, on the north and east by a large parcel owned by Defendants, and on the south by camp property owned by another landowner. The Bloomers access their camp by use of the private Villula Road, which runs north-south in this vicinity and which is located more or less entirely upon Defendants' property. The Villula Road comes within approximately twenty feet of the Bloomer parcel, and Defendants are the record title holders to the land between the Bloomer parcel and the Villula Road. The Bloomers use Villula Road to access their property.

The Bloomers claim adverse possession of three areas of land, as shown on the exhibits attached to the complaint. The first parcel is the area of land between the Bloomer camp property and the Villula Road, approximately 66 feet long and between 15 and 23 feet wide. The Bloomers claim that they adversely possessed this area by parking their cars, and using it to access their camp. In addition, the Bloomers attached a

1

basketball backboard and rim to a tree sometime during the 1960s and used the area for basketball and other games. Sometime later, a tetherball pole was placed in the ground and a freestanding basketball backboard was placed. Ms. Bloomer has also maintained a "rock garden" here, and a gravel pile was dumped here sometime during the 1950s.

The second parcel is a strip of land along the northern boundary of the Bloomer parcel, extending from the lake to Villula Road. The strip is approximately 9 to 15 feet long, and approximately 155 feet wide. The Bloomers claim that they raked leaves in this area every year, placed a swingset and clothesline, and used the area for overflow seating during family picnics. There is also a "boat mooring" anchored to the shore, which the Bloomers claim to have used at least annually since the 1950s.

The third parcel is a parking area to the east of the Villula Road, measuring approximately 27 feet by 22 feet by 33 feet by 27 feet. The Bloomers claim to have used this area for overflow parking and children's games, and for shooting at trees.

Defendants argue that the Bloomers' use of the disputed parcels, even when viewed in the light most favorable to the Bloomers, does not establish a claim for adverse possession. Defendants argue that the Bloomers have not "planted their flag on the land and left it unfurled, without retreating in their claim to it." *MacDonough-Webster Lodge No. 26 v. Wells*, 2003 VT 70, ¶ 24, 175 Vt. 382. More specifically, Defendants assert that the Bloomers' evidence does not show that they ever excluded others from the property or otherwise asserted an exclusive right of possession. *Patch v. Baird*, 140 Vt. 60, 64 (1981).

The Bloomers maintain that they used the areas openly, notoriously, and continuously for more than fifteen years, and that their possession of the property was hostile. *N.A.S. Holdings, Inc. v. Pafundi*, 169 Vt. 437, 440 (1999); 12 V.S.A. § 501. Through various affidavits, members of the Bloomer family have testified that they believed that the disputed areas belonged to them, and used the areas accordingly. The Bloomers contend that they were surprised by the results of a 1998 survey showing that the deeded boundaries to their property did not include the disputed areas. The Bloomers also assert that there was never any need to exclude others from the property because no one other than the Bloomers ever used the disputed areas, and no one ever challenged their usage.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, referred to in the statements required by Rule 56(c)(2), show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3). The party moving for summary judgment has the burden of proof, and the opposing party must be given the benefit of all reasonable doubts and inferences in determining whether a genuine issue of material fact exists. *Price v. Leland*, 149 Vt. 518, 521 (1988). However, summary judgment is mandated where, after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an element essential to his or her case, and on which she has the burden of proof at trial.

2

*Poplaski v. Lamphere*, 152 Vt. 251, 254–55 (1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

To acquire property by adverse possession, and thereby effectuate an ouster of the owner, the claimant bears the burden of demonstrating that their use and possession of the property was "open, notorious, hostile and continuous throughout the statutory period of fifteen years." *Pafundi*, 169 Vt. at 440; *Jarvis v. Gillespie*, 155 Vt. 633, 638 (1991); 12 V.S.A. § 501. Adverse possession rests upon the failure of the true owner to exercise his or her rights of ownership in the face of an obvious, adverse, or hostile possession by another. *Harlow v. Miller*, 147 Vt. 480, 483 (1986); see also *Barrell v. Renehan*, 114 Vt. 23, 29 (1944) (stating that the claimant must "unfurl his flag on the land, and keep it flying so that the owner may see, if he will, that an enemy has invaded his dominions and planted his standard of conquest").

In this case, while the Bloomers have presented evidence showing that they used the disputed areas, the activities they engaged in—children's games, occasional picnics, drying clothes, parking cars, raking leaves, storing boat trailers—are the sorts of activities and infringements that are typically tolerated between abutting owners of lakefront cottages in the summer in Vermont, and reflect a collegial and congenial way of life at camp. The evidence offered by the Bloomers does not show that they intended to exclude others from the property by virtue of their recreational activities, or otherwise asserted a hostile or adverse claim of ownership that "challeng[ed] the owner's right to use the land at all."[1] *Patch*, 140 Vt. at 64.

The Bloomers contend that it was not necessary to exclude others from the property because they believed it belonged to them, and because no one ever challenged their use of the disputed areas. These arguments are not sufficient to create a genuine issue of material fact for two reasons. First, although adverse possession may be established where the claim is based upon an honest, but mistaken, belief regarding the property boundaries, the claimant still must demonstrate an intent to exclude others from the property and thereby possess the property as their own. See *Wells*, 2003 VT 70, ¶ 24 ("A person can gain title by adverse possession even without the intention of taking land not belonging to him 'so long as he does intend to exclude all others.'") (quoting *Ganje v. Schuler*, 659 N.W.2d 261, 266 (Minn. Ct. App. 2006)). In this case, even assuming that

---

[1] Comparison of past cases, especially those involving claims of adverse possession on lakefront property, support the conclusion that the Bloomers' activities, even when viewed in the light most favorable to them, do not establish a claim of ownership in the property. Compare *Deyrup v. Schmitt*, 132 Vt. 423, 425–27 (1974) (holding that children's ballgames, planting of small garden, running with dog, placement of boat trailer, and parking cars on disputed portion of lakefront property were not "obvious adverse use[s] of the disputed property"); *Stanard v. Urban*, 453 N.W.2d 733, 735–36 & n.1 (Minn. Ct. App. 1990) (holding that lawn maintenance, storage of lake equipment, and children's play on lakefront property were "nowhere near the level of hostile possession" necessary to establish claim of right) with *Lawrence v. Pelletier*, 154 Vt. 29, 34 (1990) (adverse possession established by replacement of septic system, construction of retaining wall and stairway, and nonpayment of rent). The recent decision in *First Congregational Church of Enosburg v. Manley*, 2008 VT 9 also supports the conclusion that the Bloomers' uses of the property were not sufficient to establish adverse possession. See *Manley*, 2008 VT 9, ¶¶ 11, 15–22, 19 Vt. L. Wk. 21 (holding that lawn-mowing and parking cars did not establish adverse possession).

3

the Bloomers were mistaken about their boundaries, there is no evidence that they intended to exclude others from the disputed areas by virtue of their activities. Second, it misplaces the burden of proof and subverts the policies favoring continued land ownership and neighborliness to require the true owners of property to interrupt minor activities and infringements that are not sufficient to ripen into a claim for adverse possession. The presumption of hostility does not arise until the claimant has engaged in open and notorious use of the property that indicates that an adverse claim has been asserted. See *Russell v. Pare*, 132 Vt. 397, 404 (1974) (describing presumption).

For these reasons, the court concludes that the evidence submitted in response to Defendants' Motion for Summary Judgment, even if taken in the light most favorable to the Bloomers as the non-moving party, does not demonstrate a genuine issue of material fact as to whether the Bloomers asserted an exclusive use of the three disputed areas sufficient to support a claim for adverse possession. Defendants are therefore entitled to summary judgment on the claim for adverse possession. This disposition makes it unnecessary to address Defendants' claims that they have used the disputed areas throughout the relevant time periods.

## *Plaintiff's Motion to Amend Complaint*

Plaintiff seeks to amend her complaint to add claims that (1) Defendants acquiesced in her family's use of the area between the easterly boundary of her property and the Villula Road, and (2) her family has acquired a prescriptive easement to use, maintain, repair and replace the boat mooring located to the north of the purported boundary line. Defendants oppose the motion, arguing that they have already engaged in considerable discovery and that the addition of new claims will be prejudicial in that additional discovery expenses will be incurred. Defendants also claim that the proposed amendments are futile. *Perkins v. Windsor Hosp. Corp.*, 142 Vt. 305, 313 (1982).

Vermont has a tradition of liberality in allowing amendments to pleadings, *id.*, and leave to amend "shall be freely given when justice so requires." V.R.C.P. 15(a). Amendments to pleadings are allowed "when there is no prejudice to the objecting party, and when the proposed amendment is not obviously frivolous nor made as a dilatory maneuver in bad faith." *Shahi v. Madden*, 2008 VT 25, ¶ 7, 19 Vt. L. Wk. 98 (quoting *Hunters, Anglers & Trappers Ass'n of Vt., Inc. v. Winooski Valley Park Dist.*, 2006 VT 82, ¶ 17, 181 Vt. 12).

Under this standard of review, the court will allow Plaintiff to amend her complaint to allege that her family has acquired a prescriptive easement to use, maintain, repair and replace the boat mooring. See *Wells v. Rouleau*, 2008 VT 57, ¶ 8, 19 Vt. L. Wk. 227 (stating elements for establishing prescriptive easements). The amendment is not prejudicial because the original complaint alleged that the Bloomer family had used the mooring apparatus, and sought declaratory judgment that the Bloomers had acquired a "perpetual easement to maintain the boat anchor." Moreover, there has already been at least some discovery on this issue. The court is not persuaded that the proposed amendment has been made as a dilatory maneuver or is frivolous. Furthermore, the claim

4

is supported by assertions of fact sufficient to satisfy the standards of notice pleading. The amendment is accordingly allowed.

The addition of a claim for acquiescence, however, would be futile. The Bloomers have not alleged any new facts showing "mutual recognition of a given line by adjoining landowners," *Okemo Mountain, Inc. v. Lysobey*, 2005 VT 55, ¶ 14, 178 Vt. 608 (mem.), and there is no evidence in the record submitted on summary judgment that the Lampheres recognized the line asserted by Plaintiff. Plaintiff's Motion to Amend Complaint is accordingly denied as to the claim for acquiescence.

## ORDER

(1) Defendants' Motion for Summary Judgment, filed Feb. 1, 2008, is *granted*;

(2) Plaintiff's Motion to Amend Complaint, filed Apr. 11, 2008, is *granted* as to the claim for prescription and *denied* as to the claim for acquiescence; and

(3) Plaintiff shall serve and file the Amended Complaint within 10 days.

Dated at Rutland, Vermont this 31ˢᵗ day of July, 2008.

Hon. Mary Miles Teachout
Presiding Judge