Filed 04/07/26

VERMONT SUPERIOR COURT
Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-CV-03722

| Standing Trees Inc. v. State of Vermont et al |
|---|

## ENTRY REGARDING MOTION

Title:      Motion to Dismiss; Motion to Amend Complaint ;  (Motion: 1; 5)
Filer:      Melanie Kehne; James A. Dumont
Filed Date: October 28, 2025; February 09, 2026

The motion is GRANTED IN PART and DENIED IN PART.

Defendants' motion to dismiss is granted in part and denied in part.  Plaintiff's motion to amend is granted.

Plaintiff Standing Trees Inc. describes itself as "a nonprofit corporation whose purpose is to protect and restore New England's native ecosystems, and safeguard the interests of its supporters and members."  In this case, it challenges alleged determinations or imminent decision making by Defendants the State of Vermont, the Agency of Natural Resources (ANR), the Department of Forests, Parks, and Recreation (FPR), and the Department of Fish & Wildlife (F&W) to harvest timber, or to authorize the harvest of timber, in Vermont State forests, parks, and wildlife management areas generally, and specifically in part of the State forest known as the Worcester Range Management Unit Treatment 1 (Treatment 1).[1]  Standing Trees believes that these decisions, at least some of which have been or will be made pursuant to the State's Worcester Range Management Unit Long Range Management Plan (the Plan), will damage the environment and its and the public's environmental interests with the only "benefits" accruing to private timber harvesters.[2]  It argues that the development and operation of the Plan, and relevant decision making, did not and will not include due regard for the environmental impact of these harvests and reasonable opportunities for public comment and participation.

The Amended Complaint

---

[1] In this decision, there is little reason to distinguish among the defendants.  Unless context requires otherwise, for the sake of simplicity, the court refers to them collectively as the State.

[2] The Plan was prepared for and approved jointly by ANR, FPR, and F&W.

1

Plaintiff's amended complaint includes 5 counts.[3]  Under Count 1, Standing Trees asserts that the State has violated the public trust doctrine by making decisions affecting public trust resources (State navigable waters and, as Standing Trees urges, their tributaries) without due regard for their conservation for the public's benefit, and by undertaking decision making processes affecting those resources without sufficient public notice and opportunity for input. See *City of Montpelier v. Barnett*, 2012 VT 32, ¶ 18, 191 Vt. 441 ("[T]he public trust doctrine means that navigable waters and the land below them are held in common by the people of this state.").  Under Count 2, Standing Trees claims that State timber harvest decisions have violated or will violate Vt. Const. ch. II, § 67 ("The inhabitants of this State shall have liberty in seasonable times, to hunt and fowl on the lands they hold, and on other lands not inclosed, and in like manner to fish in all boatable and other waters (not private property) under proper regulations, to be made and provided by the General Assembly.").  Under Count 3, Standing Trees claims that the State's decisions authorizing timber harvests have violated or will violate Vermont's Common Benefits Clause, Vt. Const. ch. I, art. 7, by profiting specially interested timber harvesters to the detriment of the public generally or that part of the public whose interests will be harmed by the environmental damage caused by those harvests.  Under Count 4, Standing Trees claims that the State has violated both the last clause of Vt. Const. ch. I, art. 7 and Vt. Const. ch. I, art. 13 (freedom of speech) by, in its words, providing "information to the timber industry, but not Standing Trees."  Second Amended Complaint ¶ 117.  Under Count 5, Standing Trees seeks, pursuant to 3 V.S.A. § 831(c), to compel the State to set aside the Plan, which was not adopted as a formal "rule" under the Administrative Procedures Act, 3 V.S.A. §§ 800–850, and to initiate a formal rulemaking process to adopt it as such.  See 3 V.S.A. § 831(c) ("An agency shall initiate rulemaking to adopt as a rule an existing practice or procedure when so requested by 25 or more persons or by the Legislative Committee on Administrative Rules.").

The State seeks dismissal of all claims pursuant to Rule 12(b)(6).

The Dismissal Standard

The Vermont Supreme Court has described the familiar standard for Rule 12(b)(6)

---

[3] Standing Trees filed a motion to amend the first amended complaint to clarify that its members engage in the activity of fishing.  The clarification responds to an argument by the State to the effect that the complaint lacked any such allegation.  The clarification is unnecessary as the court would have construed the complaint to include that allegation.  See V.R.C.P. 8(f) ("All pleadings shall be so construed as to do substantial justice.").  In any event, the State does not oppose amendment; the motion to amend is granted.  The Court has incorporated this amendment into its review of the underlying motion to dismiss.

motions to dismiss for failure to state a claim as follows:

> "A motion to dismiss . . . is not favored and rarely granted." This is especially true "when the asserted theory of liability is novel or extreme," as such cases "should be explored in the light of facts as developed by the evidence, and, generally, not dismissed before trial because of the mere novelty of the allegations." In reviewing a motion to dismiss, we consider whether, taking all of the nonmoving party's factual allegations as true, "'it appears beyond doubt' that there exist no facts or circumstances that would entitle the plaintiff to relief." We treat all reasonable inferences from the complaint as true, and we assume that the movant's contravening assertions are false.

*Alger v. Dep't of Labor & Indus.*, 2006 VT 115, ¶ 12, 181 Vt. 309 (citations omitted); see also 5B A. Benjamin Spencer, et al., Fed. Prac. & Proc. Civ. § 1357 (4th ed.) ("Ultimately, the burden is on the moving party to prove that no legally cognizable claim for relief exists.").

Legal Analysis

### A.     *Count 1—Public Trust Doctrine*

Under Count 1, Standing Trees asserts that the State has violated or will violate the public trust doctrine by making timber harvest decisions that have some impact on the State's navigable waters without due consideration for the preservation and accessibility of those trust resources for the benefit of the public. Standing Trees further asserts that, when trust resources are in issue, the State has special obligations to involve the public in its decision-making process and to ensure that it provides the public with clear notice of the decisions made. Standing Trees alleges that the State instead has made or is making decisions in secret about timber harvests (that presumably put navigable waters in some kind of relevant risk) without involving or notifying the public.

The State argues that this claim should be dismissed because Standing Trees cites no authority for the proposition that the doctrine imposes any particular procedural requirements on decisions about timber harvests on State land, Standing Trees already has received all the process it could be entitled to, and the Plan reflects that the State already has taken into consideration appropriate public trust interests, even if it did so pursuant to applicable statutes reflecting those interests, rather than under an express "public trust" label. The State further argues that Standing Trees cannot assert the public trust doctrine as a standalone claim in any event, at least in a case of this sort. But see 1 State Environmental L. § 4:14 ("The courts have allowed private citizens

to institute litigation aimed at enforcing the public trust doctrine, permitting such suits even when they conflict with administrative determinations regarding the trust's applicability.").

The State's motion is denied as to this claim. No doubt, as far as it is framed in the complaint, Standing Trees' public trust claim is broadly stated in the extreme, and there is no particular Vermont precedent that has employed the doctrine in the manner Standing Trees seeks to apply it. In a different, better settled substantive area, the court might conclude that this claim is too amorphous and conclusory even for Vermont's Rule 12(b)(6) standard. See *Parker v. Town of Milton*, 169 Vt. 74, 78 (1998) ("[T]he standing requirement of particularized injury is not suspended in cases where the plaintiff asserts the public trust doctrine."). The public trust doctrine, however, is an elemental feature of American and Vermont common law. There are few cases in Vermont discussing it in material detail, and those that do address the very specific factual contexts in which those cases arose. See generally, e.g., *City of Montpelier v. Barnett*, 191 Vt. 441 (2012); *State v. Central Vermont Ry., Inc.*, 153 Vt. 337 (1989); *State v. Malmquist*, 114 Vt. 96 (1944); *Hazen v. Perkins*, 92 Vt. 414 (1918). These cases generally do not establish clear principles and standards as applied to the (still murky) facts of this case, especially in light of the unusual nature of the relief sought by Standing Trees. See 1 State Environmental L. § 4:23 ("In applying the doctrine when the use of trust resources is at issue, rather than their alienation, the case law is more uneven and the doctrine's utility more debatable."). And the law is not so settled in other states that their case law provides reliable guidance in this context. See Law of Neighbors § 12:9 ("The public trust doctrine is a somewhat diffuse group of common-law principles.").

The court notes that the Plan itself, which is not in the record, is 394 pages long, any timber harvest decisions that have been made pursuant to it, or may be in the future, are not specifically described in the complaint, how any such decisions might affect public trust resources is similarly not specifically described in the complaint, and the extent to which the public was involved in the development of the Plan or any decisions that have been or will be made pursuant to it or in relation to any other non-Plan timber harvests also is unclear. Both sides enthusiastically invite the court to independently explore the Plan, and the history of its development, as well as other non-record information, in support of their positions on the State's motion. That would be an inauspicious task under the circumstances and is directly at war with Vermont's narrow dismissal standard.

In the end, Plaintiff's claim is truly a novel application of an amorphous common law doctrine. The court declines to dismiss it before its nature and the relevant facts of its application in the present case more clearly materialize. The wiser course, which is consistent with Rule 12(b)(6), is to let the factual record develop, give the parties a fairer opportunity to develop their positions as to the law, and then return to this matter under far more probing summary judgment procedure. V.R.C.P. 56. The State's motion to dismiss count 1 is **Denied.**

B.    *Count 2—The right to fish, Vt. Const. ch. II, § 67*

Under Count 2, Standing Trees claims that State timber harvest decisions have violated or will violate Vt. Const. ch. II, § 67, which states: "The inhabitants of this State shall have liberty in seasonable times, to hunt and fowl on the lands they hold, and on other lands not inclosed, and in like manner to fish in all boatable and other waters (not private property) under proper regulations, to be made and provided by the General Assembly." The court understands this claim to be that Standing Trees' members fish in "boatable and other waters," and the State's timber harvest decisions will unconstitutionally destroy fish populations or otherwise eliminate their ability to fish in affected waters. The State argues that Section 67 is not "self-executing," and Standing Trees thus cannot have a direct cause of action pursuant to it. The court agrees.

A direct cause of action under a constitutional provision is not available unless that provision is self-executing. A self-executing provision is "complete in itself, it executes itself"; it supplies a sufficient rule for its own execution and does not require legislative development. *Shields v. Gerhart*, 163 Vt. 219, 224 (1995) (quoting *Davis v. Burke*, 179 U.S. 399, 403 (1900)). The Court has explained:

> As we articulated in [*Shields*], a Vermont constitutional provision is self-executing "'if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, . . . and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given force of law.'" We further explained that "a self-executing provision should do more than express only general principles; it may describe the right in detail, including the means for its enjoyment and protection." In *Shields*, we held that Article 1, which states that "all men are born equally free and independent, and have certain natural, inherent, and unalienable rights," is not self-executing because it does not establish enforceable rights "but merely lists [them] to flesh out philosophical truisms."
>
> On the other hand, we concluded that Article 13, which states that "people have a right to freedom of speech," is self-executing because it "unequivocally

5

expresses more than general principles alone. It sets forth a single, specific right of the people to make themselves heard, a fundamental characteristic of democratic government." That, coupled with the absence of a legislative directive, supported our conclusion that Article 13 is self-executing.

*Nelson v. Town of Johnsbury Selectboard*, 2015 VT 5, ¶¶ 47–48, 198 Vt. 277 (citations omitted); see also *State v. Zullo*, 2019 VT 1, ¶ 34, 209 Vt. 298 ("Ordinarily a self-executing provision does not contain a directive to the legislature for further action.").

It is apparent upon considering this standard that Section 67 is not self-executing. Section 67 makes broad reference to the rights to hunt, fowl, and fish. It does not supply any more specific rule by which the judiciary could reasonably implement the right without legislative development. And it expressly subjects the right to regulation by the legislature, without clear limits to that regulation. See *Hunters, Anglers and Trappers Ass'n of Vermont, Inc. v. Winooski Valley Park District*, 2006 VT 82, ¶ 6, 181 Vt. 12 (where the legislature properly delegates authority to regulate hunting and trapping, delegee's promulgated regulations "will not violate any constitutional right"). Section 67 "underscores the early emphasis placed upon the public interest in Vermont's navigable waters" but it "has no direct application" when evaluating a public trust matter. *State v. Cent. Vermont Ry., Inc.*, 153 Vt. 337, 343 (1989).

Because Section 67 is not self-executing, Standing Trees cannot assert any claim directly pursuant to it. The State's motion to dismiss is **Granted** as to this claim.

C.      *Count 3—Common Benefits, Vt. Const. ch. I, art. 7*

Under Count 3, Standing Trees claims that the State's decisions authorizing timber harvests have violated or will violate Vermont's Common Benefits Clause, Vt. Const. ch. I, art. 7, by profiting specially interested timber harvesters to the detriment of the public generally or that part of the public whose competing environmental interests will be diminished by the environmental degradation caused by those harvests. This claim fails at the most basic level.

"The purpose of the Common Benefits Clause is to ensure that protections conferred by the State are for 'the common benefit of the community' and not just a part of the community." *Brown v. State*, 2018 VT 1, ¶ 16, 206 Vt. 394. To bring a Common Benefits claim "of course, a plaintiff must [first] show the denial of a common benefit." *In re Town Highway No. 20*, 2012 VT 17, ¶ 37, 191 Vt. 231. *Town Highway No. 20* is a "class of one" case, unlike this case, but

6

the denial of a common benefit is elemental to *any* Common Benefits claim. The only meaningful such benefit in this case is the authority, granted by the State, to harvest timber on State land. Standing Trees does not want to harvest timber. It wants to stop the harvest of timber. This is not a Common Benefits claim by any measure—it is a mere policy dispute with the State. If it could pass for a viable claim, nearly any difference with State policymakers could be constitutionalized under this rationale. This is not the point of Article 7, and Plaintiff's claim does not make out a cognizable claim under the common benefits clause.

The State's motion is **Granted** as to this claim.

D.      *Count 4—Vt. Const. ch. I, art. 7, and free speech, Vt. Const. ch. I, art. 13*

Under Count 4, Standing Trees claims that the State has violated both the last clause of Vt. Const. ch. I, art. 7 and Vt. Const. ch. I, art. 13 (freedom of speech) by, in its words, providing "information to the timber industry, but not Standing Trees." Second Amended Complaint ¶ 117.

As far as Article 7 goes, Standing Trees focuses not on the first clause, which clearly is the heart of the Common Benefits Clause, but the second clause, which provides: "and that the community hath an indubitable, unalienable, and indefeasible right, to reform or alter government, in such manner as shall be, by that community, judged most conducive to the public weal." Article 13 provides: "That the people have a right to freedom of speech, and of writing and publishing their sentiments, concerning the transactions of government, and therefore the freedom of the press ought not to be restrained." The court understands Standing Trees' claim to be that it has advocated its interests to the State, including by suing it in an earlier round of litigation, and in response the State has taken action against it by limiting its access to information and thus inhibiting its ability to advocate.

The Vermont Supreme Court has never held that the second clause of Article 7, as distinct from the Common Benefits Clause, is self-executing, and the court concludes that it is not. The second clause merely provides generally that the people have the right to change the way they are governed. That is it. To the extent that this may refer in some manner to the sort of access and advocacy that Standing Trees engages in, this subject matter already is more

7

specifically covered by both Article 6 and Article 13.[4]  Otherwise, this part of Article 7 is an extremely broad truism of democratic forms of government and includes no more distinct rule by which the judiciary could reasonably implement it without legislative development.  It provides no basis for a direct claim against the State.

In this case, for several related reasons, Article 13 does not save the day.  First, as pleaded, the claim is simply so conclusory that the State cannot reasonably be expected to respond to it.  Courts "are not required to accept as true 'conclusory allegations or legal conclusions masquerading as factual conclusions.'"  *Vitale v. Bellows Falls Union High Sch*., 2023 VT 15, ¶ 28, 217 Vt. 611 (quoting *Colby v. Umbrella, Inc*., 2008 VT 20, ¶ 10, 184 Vt. 1). Standing Trees argues that the State is not providing some kind of information to it.  It is wholly unclear what that information may be, what right to it Standing Trees may have, and why the failure to produce it would amount to a constitutional violation.  There is a vague allegation that the information, whatever it is, is provided to the "timber industry," but there is no palpable allegation that the State proactively makes the information readily available to the public but somehow prevents Standing Trees from accessing it.

Ordinarily, members of the public acquire nonconfidential and unprivileged governmental records, if those records are not otherwise available, by making requests to the government for that information.[5]  Such requests are subject to the Public Records Act, 1 V.S.A. §§ 315–320, under which Standing Trees would have no elevated right of access beyond that of the general public.  Standing Trees does not assert that the Act itself is unconstitutional or that the State has improperly denied a public records request.  If the State had, then the proper course would be review pursuant to the Act, not an independent constitutional claim.  See 1 V.S.A. § 317 (laying out the right to access along with concomitant exempts that the legislature has created).  Given that there is no specific request for public records at issue in this case, there is nothing to review in regard to any alleged denial of "information."  Standing Trees' claim

---

[4] In fact, Vermont's sunshine laws, including the public meeting and public records act provide the statutory framework to enforce these more generalized values embodied in the right to know, the right to public participation, and the right to require the state to act in public.  1 V.S.A. §§ 310–320; see 1 V.S.A. §§ 311, 315 (citing to Article 6 and the "right review and criticize their decisions" and be held "accountable").

[5] The State represents that Standing Trees freely takes advantage of this right: "Defendants note that the Department of Forests, Parks and Recreation has produced over 10,000 records to Plaintiff in response to its approximately 20 public records requests and other requests for information over the past 3.5 years, which have taken hundreds of staff hours to fulfill."  Motion to Dismiss at 18 n.8 (filed Oct. 28, 2025).

effectively tries to re-cast this well-established process into a free-standing constitutional right, but the argument is simply too generalized to show how or why it should exist outside of the public record process or the basis for the alleged constitutional repercussions.

To the extent that the claim might be more productively framed as one of retaliation in response to Standing Trees' attempts at petitioning the government, the claim remains impermissibly vague. All the court can tell from the pleadings is that Standing Trees appears to believe without explanation that it has some elevated right of access to governmental records, and the State's failure to accede to Standing Trees' belief is actionable retaliation. This is insufficient to state a constitutional claim.

To the extent that the perceived harm to Standing Trees is that it may not receive notice of any particular decision authorizing a timber harvest in time to file some kind of Rule 75 motion (presumably mandamus) in compliance with Rule 75(c) to thwart the decision, Standing Trees neither explains how any such decision could possibly be redressable by a mandamus claim and again fails to explicate why its access to such information under the Public Records Act would not comply with the constitution. See V.R.C.P. 75(c) (claim subject to Rule 75 procedure must be filed within 30 days of act or 6 months of a failure to act); see also *Petition of Fairchild*, 159 Vt. 125, 130 (1992) ("A court can issue a writ of mandamus . . . only under certain circumstances: (1) the petitioner must have a clear and certain right to the action sought by the request for a writ; (2) the writ must be for the enforcement of ministerial duties, but not for review of the performance of official acts that involve the exercise of the official's judgment or discretion; and (3) there must be no other adequate remedy at law.").

Absent this information, the Court finds no legal basis to sustain this count of Plaintiff's complaint. The State's motion is **Granted** as to this claim.

E.      *Count 5—Rulemaking pursuant to 3 V.S.A. § 831(c)*

Under Count 5, Standing Trees claims a right, pursuant to 3 V.S.A. § 831(c), to compel the State to set aside the Plan because it was not adopted as a formal "rule" under the Vermont Administrative Procedures Act (VAPA), 3 V.S.A. §§ 800–850, or, in the alternative, to compel the State to initiate a formal rulemaking process to adopt it as such. Standing Trees centers this claim on Section 831(c) of the VAPA, which states that "An agency shall initiate rulemaking to adopt as a rule an existing practice or procedure when so requested by 25 or more persons or by the Legislative Committee on Administrative Rules." 3 V.S.A. § 831(c); see also 3 V.S.A. §

9

801(b)(7), (8) (a procedure is a practice reduced to writing).

The State argues (a) that the Plan is neither a practice nor a procedure and thus is not subject to § 831(c); and/or (b) that adopting a procedure as a rule, or a decision to comply with a § 831(c) request, is neither ministerial nor nondiscretionary, thus putting it outside the writ of mandamus for the purposes of review and enforcement through Rule 75.

The broad and mandatory language of Section 831(c) is also subject to exemptions and limitations. Section 832 provides several limitations on whether a particular procedure or practice may be subjected to rulemaking. In reviewing Section 832, the Court finds that there are at least three relevant provisions that could potentially apply to the Plan. They include:

- Section 832(b)(2): nullifying any rulemaking obligation under Section 831(c) regarding procedures or processes: "concerning only the physical servicing, maintenance, or care of agency owned or operated facilities or property;"

- Section 832(b)(3): nullifying any rulemaking obligation under Section 831(c) regarding procedures or processes: "relating only to the use of a particular facility or property owned, operated, or maintained by the State or any of its subdivisions, if the substance of that rule is adequately indicated by means of signs or signals to persons who use the facility or property;" and

- Section 832(d) "Notwithstanding subsections 831(b) and (c), when an agency receives a request to adopt a procedure or rule, it may elect to issue a declaratory ruling when it has in effect a procedure or rule, as requested, which disposes of the question presented."

3 V.S.A. §§ 832(b), (d).[6]

Like much of administrative law, the interplay between Section 831 and 832 presents a nuanced dialectic between competing values. On one hand, the Vermont Administrative Procedures Act promotes rulemaking and its accompanying public scrutiny when the actions of a state agency affecting members of the public begin to gel into the type of fixed and reliable procedures that advance beyond the direct statutory mandate and on which there should be some review and public process. 3 V.S.A. § 800; see also *King v. Gorczyk*, 2003 VT 34, ¶¶ 17–20 (holding that VAPA has different obligations between rules and practices and procedural

---

[6] Plaintiff has indicated that the State has not issued such a declaratory ruling. The Court did not find one in the complaint or available record, but this may be a disputed fact given the Agency's reliance on Section 832(d) in its briefing.

guidelines).  Thus, under Section 831(c), a small group of citizens can either compel rulemaking or obtain a declaratory judgment on which they can rely as to the meaning and import of a particular administrative agency's policies and procedures.

On the other hand, these procedures are not intended to usurp the agency's authority and ability to act.  Section 831 is not a gotcha provision to strip the agency's ability to manage its portfolio of programs and subject-matter areas, to which the legislature has delegated oversight.

Yet, before the Court can dive into the obligations and exceptions of Sections 831 or 832, the analysis must begin with the primary question of whether the Plan is, in fact, a "practice" or a "procedure" as those terms are defined in 3 V.S.A. §§ 801(7), (8).  In this case, the State contends that the Plan is a "blueprint of strategies and activities" that the State and its various agencies "may implement to meet management goals and objectives" for the respective units. Def. Mot. to Dismiss at 19.  This description appears to be an effort in distancing the Plan from the mandatory or compelling language that marks procedures and practices and drawing it closer to something like a guidance document.  3 V.S.A. § 801(14).  Standing Trees contests this characterization and points to provisions that it contends are mandatory procedures and binding practices on both the agencies as well as the public.  Pltf. Opposition at 27–31.

Both of these characterizations rely on each party's interpretation of the Plan and the meaning of its terms.  The Plan itself is a lengthy, complicated document concerned with timber harvesting, ecology, and woodland management.  The terms "procedure" and "practice" are broad, generalized definitions.  Applying these terms, as opposed to the term "guidance document," requires more than just a cursory glance at isolated provisions or using terms outside the VAPA to describe its characteristics.  In analogous situations, the Court has looked not only to the document to understand its function but to testimony from experts and the agency itself, calling upon its relevant expertise.  See *Plum Creek Maine Timberlands, LLC v. Vermont Dept. of Forest Parks and Recreation*, 2016 VT 103, ¶¶ 17–18 (noting that the trial court took testimony from both the forestry company as well as the county forester regarding what compliance with the forestry plan meant); see also *id*. at ¶¶ 22–29 (discussing the standard of review concerning interpretation of agency methodology under a Rule 74 review).  This analysis is further complicated by the particular policies, practices, procedures, or even rules that the agency may have poured into these crucibles.  See *King*, 2003 VT 34, at ¶¶ 17–20 (holding that VAPA creates different obligations between rules, practices, and procedural guidelines,

11

depending, in part, on how far the agency acts beyond the statutory language).

Given the significant disagreement between the parties regarding how the Court should classify the Plan under the terminology and concepts of the VAPA along with the dense and technical nature of the Plan, a motion to dismiss at this time is simply inappropriate. The Court finds that a careful review and determination of how the Plan fits within the categorical components of the VAPA is an important first step to the resolve the subsequent questions, which include: (1) Was the Plan a "practice" or "procedure," as those terms are defined, that qualifies it for the rulemaking trigger of 3 V.S.A. § 831(c)? (2) If the Plan contains a mixture of guidance, policy, procedures, and practices, does Section 831(c) permit the parsing of the Plan into rulemaking and non-rulemaking segments? (3) Do any of the limitations under 3 V.S.A. § 832 apply to the Plan and limit rulemaking requirements? (4) If 3 V.S.A. § 832(d) applies, has the agency issued a declaratory ruling in lieu of rulemaking?

Determining the nature of the Plan within the standards and terminology of the VAPA will also clarify the Rule 75 issues raised by the State concerning the complexity of the Plan and the contention that its application is effectively discretionary in nature, and not ministerial. See *Maple Run Unified School District v. Vermont Human Rights Commission*, 2023 VT 63, ¶ 11 (noting that without clear and certain legal right to the action sought there is no basis for Rule 75 relief); see also *Rose v. Touchette*, 2021 VT 77, ¶ 13. If the Plan is largely a "procedure" or "practice," then the Rule 75 analysis would simply follow the plain language of Section 831(c), and the Court would remand for either rulemaking or a declaratory ruling (if there has not been one). If the nature of the document is more complicated, then Rule 75 relief may not be appropriate as the Plan may fall outside of the parameters of a procedure or practice. In such a case, the Plan may simply rest in the discretion of the agencies. Such a determination would also be appropriate if the Plan adhered directly to the authorizing statutes. See *King*, 2003 VT 34, at ¶ 20.

Given the factual nature of this review, the potential need for testimony, and the more in-depth analysis required, the Court finds that it is not appropriate, at this time, to dismiss Standing Trees' fifth claim under Rule 12(b)(6) as the elements of the claim finds sufficient support in the limited record before the Court.

The State's motion is **Denied** as to this claim.

**Order**

12

For the foregoing reasons, Plaintiff's motion to amend is **Granted**.  The State's motion to dismiss is **Denied** as to Count 1 (the public trust doctrine claim) and to Count 5 (Rule 75 appeal to compel rulemaking under 3 V.S.A. § 831(c)) and **Granted** as to all other claims.

Electronically signed on 4/7/2026 12:20 PM pursuant to V.R.E.F. 9(d)

_____

Daniel Richardson
Superior Court Judge